## Cahalin v. Rebert

*Alan M. Black*, of *Efron, Black & Epstein*, for plaintiff.
*Lewis H. Markowitz*, of *Markowitz, Kagen & Griffith*, for defendant.

DAVISON, *J.*, April 10, 1979—We are presented with questions of first impression in this jurisdiction relating to the civil liability of those who undertake to participate in what has been characterized as child snatching.

The case comes before us on defendant's preliminary objections to plaintiff's complaint in the nature of a demurrer, a motion raising the question of venue, and a motion to strike.

We begin with the proposition that a demurrer admits every well-pleaded material fact set forth in the complaint and the inferences reasonably deducible therefrom, but not conclusions of law: Jones v. Nissenbaum, Rudolph & Seidner, 244 Pa. Superior Ct. 377, 368 A. 2d 770 (1976). Applying that standard, the complaint alleges that beginning in September 1977, while the plaintiff was residing

in Allentown, Pennsylvania, and had legal custody of his two minor children ages 8 and 11 pursuant to orders of the Court of Common Pleas of Lehigh County, Pennsylvania, and the Circuit Court for Montgomery County, Maryland, defendant, who is the maternal grandmother of the children, and the children's mother ("Goodman") " . . . embarked upon a plan to deprive the plaintiff unlawfully of the custody of [his] children." According to this plan, plaintiff alleges that when the children were surrendered by plaintiff to Goodman in December of 1977 for a pre-arranged five day visit, " . . . Goodman would flee with the children to a distant jurisdiction and conceal [their] whereabouts . . ." In furtherance of this plan, it is alleged that " . . . the defendant and Goodman traveled to Ruskin, Florida, in September 1977, to arrange a residence for Goodman and the children after Goodman's anticipated flight," and that: "On December 23, 1977, the defendant allowed her home in York, Pennsylvania, to be used as a stopping off point for Goodman and the children . . . knowing full well that Goodman did not intend to return the children to the plaintiff . . . " at the end of the visitation period. The complaint alleges that plaintiff has been unable to locate his children since that time.

The complaint further alleges that on April 4, 1978, defendant appeared before our colleague, The Honorable John E. Backenstoe, in Lehigh County Court, and that even though Judge Backenstoe directed her to do so, she refused to disclose the whereabouts of the children, asserting the privilege against self-incrimination, notwithstanding she admittedly knew their location. For this refusal, defendant was held in contempt of court. She has appealed therefrom.

It is further alleged that when defendant finally disclosed to plaintiff the Florida address on June 19, 1978, she did so "[knowing] full well" that Goodman and the children had already left for parts unknown.

It is plaintiff's contention that these allegations set forth a cause of action under Restatement, 2d, Torts, §46, for outrageous conduct causing severe emotional distress and under Restatement, 2d, Torts, §700, for causing minor children to leave or not return home, and that he has suffered damage for the loss of love and companionship of his children, for severe emotional distress inflicted upon himself, and for expenses incurred in attempting to locate his children. He also seeks punitive damages.

Before reaching the question of whether the alleged facts state a cause of action, we address two preliminary issues. First, the defendant argues that the language "knowing full well" contained in paragraphs 9 and 22 of the complaint constitutes a legal conclusion, and that, consequently, the averments that defendant allowed her home to be used as a stopping off point knowing full well Goodman had no intent to return the children and that defendant only disclosed the Florida address when she knew full well that the children were no longer there, are not admitted by the demurrer.

A practical test of whether an averment is a conclusion of law is whether it could fit or describe two or more factual situations and whether it states the consequences of what happened instead of the fact of what happened. See 2A Anderson Pa. Civ. Prac. §1019.10(a) (1969 ed.). Viewing the "knowing full well" averments in that light, it is apparent they state not conclusions but facts very material to this cause of action. Additionally, the element of knowl-

edge may be pleaded generally as was done here: Pa.R.C.P. 1019(b); Ammlung v. Platt, 224 Pa. Superior Ct. 47, 302 A. 2d 491 (1973). The allegations of paragraphs 9 and 22 of the complaint are thus properly pleaded and are admitted for purposes of the demurrer.

Second, since the action is at least partially grounded on the theory that defendant conspired with Goodman to commit the alleged tortious acts, a brief discussion of civil conspiracy is appropriate. Civil conspiracy is not of itself a tort, that is, the gravamen of the action is the damage caused by some particular tort and not the agreement to commit the tort: Baker v. Rangos, 229 Pa. Superior Ct. 333, 351, 324 A. 2d 498, 506 (1974); Daly v. Bright, 345 F. Supp. 11, 14 (E.D.Pa. 1972); Prosser Law of Torts, §46, 291, 293 (4th ed.). The elements of a civil conspiracy are a combination of two or more persons acting with a common purpose to do an unlawful or criminal act* or to do a lawful act by unlawful means or for an unlawful purpose, an overt act done in pursuance of the common purpose, and actual legal damage: Baker v. Rangos, supra; Fife v. Great Atlantic & Pacific Tea Co., 356 Pa. 265, 52 A. 2d 24 (1947), cert. denied 332 U.S. 778, 68 S.Ct. 42, 92 L.Ed. 362 (1947); 7 P.L.E. 135, §1 (1958 ed.). Although the complaint must allege facts showing the existence of the foregoing elements, since the existence of a conspiracy is usually proven by circumstantial evidence, plaintiff need not allege facts constituting direct evidence of

---

*Crimes Code of December 6, 1972, P.L. 1482, 18 C.P.S.A. §2904, makes criminal the interference with custody of children.

the combination. Allegations which, if proved, will support an inference of the combination and its intent is all that is required: Baker v. Rangos, supra. Here, plaintiff has alleged defendant participated with Goodman in a trip to Florida to arrange for a home, that defendant allowed her own home to be used as a way station for Goodman's flight knowing full well Goodman's intent, and that defendant subsequently refused to divulge the location of the children though such was known to her. We are satisfied that, if proven, such allegations are capable of supporting an inference of the existence of a combination to do an unlawful act and the commission of overt acts in furtherance of that combination. Additionally, legal damages are alleged. The law of civil conspiracy does not require, as defendant contends, an allegation of pecuniary damages. All the necessary elements of conspiracy are thus properly alleged.

If conspiracy is proven at trial, it follows that defendant will be liable for all acts committed pursuant to the conspiracy: Frantz v. Lenhart, 56 Pa. 365 (1867); Baughman v. Cooper-Jarrett, Inc., 391 F. Supp. 671 (W.D. Pa. 1975), affirmed in part, vacated in part on other grounds, 530 F. 2d 529 (3d Cir. 1976), cert. denied 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed. 2d 87 (1976); Keich v. Frost, 63 D. & C. 2d 499 (1973). Therefore, for purposes of the demurrer, allegations of acts committed by Goodman pursuant to the conspiracy are admitted by defendant as if she herself had committed those acts.

We turn now to the question of whether the complaint states a cause of action under Restatement, 2d, Torts, §46. Restatement §46 has been recognized in Pennsylvania: Papieves v. Kelly, 437 Pa.

373, 263 A. 2d 118 (1970); Beasley v. Freedman, _____ Pa. Superior Ct. _____, 389 A. 2d 1087 (1978), and it provides as follows:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

"(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or (b) to any other person who is present at the time, if such distress results in bodily harm."

The elements, then, are outrageous conduct and the intentional or reckless causing of severe emotional distress. The first element has been deemed met only when the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Restatement, §46, Comment d; Bland v. Bland, 50 D. & C. 2d 44 (1970). Comment h to the same section adds that "[w]here reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." At the very least, reasonable men may differ on whether conspiring to spirit away and the actual removal of minor children in the legal custody of another and the subsequent secreting of them in various locations around the country such that

their father cannot know if they are dead or alive, sick or well, or adequately or poorly provided for constitutes outrageous conduct. The same conclusion on very similar facts was reached in Bland, supra.

In order for a cause of action to lie, the outrageous conduct must be done with intent to cause severe emotional distress or a reckless disregard of a high probability of causing such distress. Restatement §46, Comment i, sets forth the standard for judging the existence of intent: "The rule . . . applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly, . . . in deliberate disregard of a high degree of probability that the emotional distress will follow." Although, under the facts averred and admitted, it cannot be said with certainty that the defendant acted intentionally to cause distress to the plaintiff, the allegations are sufficient to raise an inference that she acted in deliberate disregard of the high probability that plaintiff would suffer emotional distress. See Bland, supra. The level of intent indicated by the alleged facts is certainly equal to the level existing in Beasley v. Freedman, supra, in which a demurrer was also rejected.

The final element of this cause of action is the suffering of severe emotional distress. Plaintiff alleges such an injury, and the actual existence thereof would not be unusual in light of the admitted facts. Restatement §46, Comment j, provides: "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." A jury may well find that the removal of one's children and the denial of any

contact with them or knowledge of their condition for over a year would be unendurable to the proverbial reasonable man.

Defendant argues that the conduct complained of here was directed at third persons, the children, and that under subsection (2) of Restatement §46 recovery is allowed in such situations only if the complaining party was present at the time of the conduct. Though the complaint does not state that plaintiff was present during the actual taking of the children, we nonetheless reject defendant's argument for the following reasons. First, defendant's refusal to disclose the whereabouts of the children is conduct directed at plaintiff, not at third persons. Second, Prosser, Law of Torts, p. 61 (4th ed.), notes that several courts have held that even when physical conduct is aimed at a third person, if the mental distress to plaintiff is so substantially and foreseeably certain to follow that it can be treated as itself intended, then plaintiff's presence at the scene of the conduct may not be required. Third, although the removal of the children from the home did not inflict any actual physical act on plaintiff, it did directly invade his legally decreed rights to custody, and in that sense the removal was directed at plaintiff. Fourth, Restatement §46, Comment l, makes clear that the "presence" requirement is not absolute. The requirement is aimed at drawing a line so that, by way of illustration, not every person in the country could sue for mental distress if a president were assassinated. However, where, as here, a plaintiff's legal rights have been directly invaded and emotional distress to that particular plaintiff is foreseeable even when the physical acts are inflicted upon third persons, we are satisfied that the need for the physical presence requirement no longer exists.

Bearing in mind that a demurrer should be sustained only where it appears with certainty on the facts averred that the law will not permit recovery: Papieves v. Kelly, supra; we conclude that the complaint alleges all of the elements of the recognized Restatement §46 cause of action and thus survives the demurrer.

We further conclude that the complaint also states a cause of action under Restatement, 2d, Torts, §700, which provides: "One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent." Although our research has failed to unearth any Pennsylvania cases addressing Restatement §700, it has been adopted in many other jurisdictions. See McBride v. Magnuson, 282 Oregon 433, 578 P. 2d 1259 (1978); Rosefield v. Rosefield, 221 Cal.App. 2d 431, 34 Cal.Rptr. 479 (1963); Kipper v. Vokolek, 546 S.W. 2d 521 (Mo.Ct.App. 1977); Hinton v. Hinton, 141 D.C.App.57, 436 F. 2d 211 (D.C.Cir. 1970); Pickle v. Page, 252 N.Y. 474, 169 N.E. 650 (1930); Brown v. Brown, 338 Mich. 492, 61 N.W. 2d 656 (1953), cert. denied 348 U.S. 816, 75 S.Ct. 27, 99 L.Ed. 644 (1954).

It can fairly be observed that most, if not all, causes of action in tort were once considered novel, consequently, the mere lack of Pennsylvania authority does not preclude our finding that Restatement §700 is the law of Pennsylvania. See Papieves v. Kelly, supra. The *courts* and *society* as a whole have an interest in discouraging the blatant flouting of custody decrees, *parents* have an interest in preventing acts which will deprive them of contact with or knowledge concerning the whereabouts

and well-being of their children, and the *children* of this Commonwealth have an interest in being protected from being forced into the uncertainties attendant to life on the run. The fact that Pennsylvania courts have generally followed the Restatement, plus the clear public policy against child snatching as evidenced by the criminal prohibition against such conduct appearing in section 2904 of our Crimes Code, leads us to hold that Restatement §700 applies in Pennsylvania.

As we recently stated in Com. v. Sherman 37 Lehigh 342, 349 (1977):

"There are no proceedings of more paramount importance than those dealing with the welfare of children. As we observed in Traill v. Traill, 227 September Term, 1975 (C.P. Lehigh, September 30, 1975), 'The practice of grabbing the children and running off with them in custody cases is to be condemned. The welfare of the children is paramount to the niceties of the antagonisms of estranged [litigants].' We abhor such gamesmanship and will not sanction any process which is destructive or which otherwise works havoc or trauma in the life of innocent youth. See: Commonwealth ex rel. Spriggs v. Carson, 229 Pa. Superior Ct. 9, 323 A. 2d 273 (1974); and, Ford v. Ford, 371 U.S. 187, 83 S.Ct. 273 (1962)."

All the elements necessary for recovery under Restatement §700 have been properly alleged in the complaint. The allegations support the inference that the defendant and Goodman either abducted, compelled or induced the children to not return to the parent having legal custody. Proper damages for such a cause of action include recovery for loss of society of the child and for the custodial parent's

emotional distress (see Restatement, 2d, Torts, §700, Comment g) and plaintiff has alleged both types. Loss of services need not be pleaded or proven. Since Comment c makes clear that the custodial parent can recover against the non-custodial parent, Goodman's acts pursuant to any demonstrated conspiracy would be attributable to the defendant.

Defendant also contends in her preliminary objections that venue is improper in Lehigh County. Pa.R.C.P. 1042 provides that a trespass action may be brought in any county in which an assumpsit cause of action is authorized or in any other county authorized by law. Assumpsit venue is governed by Pa.R.C.P. 1006, which provides in subsection (a) that an action may be brought in a county where the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose. Here, one of the violated custody orders was issued in Lehigh County, plaintiff and children were residents of Lehigh County, the actual taking of the children for which it is alleged defendant is liable pursuant to the alleged conspiracy occurred in Lehigh County and defendant's refusal in open court to disclose the whereabouts of the children occurred in Lehigh County. Even when tortious acts are committed elsewhere, it has been held that venue properly lies in the county where the injury is suffered, and in this case that is Lehigh County. See Emert v. Larami Corp., 414 Pa. 396, 200 A. 2d 901 (1964); Action Industries, Inc. v. Wiedeman, 236 Pa. Superior Ct. 447, 346 A. 2d 798 (1975). Venue is thus proper in Lehigh County.

Finally, it appearing that counsel for the parties have agreed to strike the reference in paragraphs 23 and 24 of the complaint to the phrase

$1,000,000, and to substitute therefor in each instance the phrase "in excess of $10,000," we will direct that agreement be implemented.

## ORDER

Now, April 10, 1979, for the reasons set forth in the accompanying opinion, and after due consideration of the briefs and oral argument, it is ordered that defendant's preliminary objections in the nature of a demurrer and a motion raising the question of venue be and the same are hereby denied and dismissed; and it is further ordered, it appearing that counsel have so agreed, that plaintiff file an amendment to his complaint alleging, in paragraphs 23, 24 and the ad damnum clauses, only that the amounts claimed, as required by Pa.R.C.P. 1044, exceed $10,000.

