[No. S003030. Apr. 10, 1989.]

MARLENE F. et al., Plaintiffs and Appellants, v.
AFFILIATED PSYCHIATRIC MEDICAL CLINIC, INC., et al.,
Defendants and Respondents.

CHERYL G. et al., Plaintiffs and Appellants, v.
AFFILIATED PSYCHIATRIC MEDICAL CLINIC, INC., et al.,
Defendants and Respondents.

584

COUNSEL

Russell S. Kussman, Kussman & Whitehill, Steven B. Stevens and Gage Mazursky, Schwartz, Angelo & Kussman for Plaintiffs and Appellants.

John G. Kerr, Haberfeld & Perlberger, Philip Hunter Thompson, Nelsen, Tang, Thompson, Pegue & Thornton, John C. Kelly, Baker, Silberberg & Kenner, R. Jeff Carlisle, Lynberg & Nelsen, David W. Groundwater and Kirtland & Packard for Defendants and Respondents.

OPINION

ARGUELLES, J.*—Can the mother of a minor child state a claim for the negligent infliction of emotional distress against the psychotherapist who, consulted to treat both mother and son, sexually molested the boy? As, in the circumstances of this case, the therapist's conduct breached a duty of care owed her as well as her child, we hold she can.

FACTS [1]

In the summer of 1980, the mothers of minor children Robert F., Phillip G., and Eric R. brought their sons to the Affiliated Psychiatric Medical Clinic, Inc., to obtain counseling for family emotional problems. The clinic assigned all three children to one of its employees, the same psychologist in each case, who began treating the mothers as well because he believed each child's psychological problems arose in part from difficulties in the relationship between mother and son.

In the spring of 1982, the boys' mothers discovered that the therapist had sexually molested their sons by fondling the boys' genitals and that he had

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1] As this case comes before us following an appeal from an order sustaining defendants' demurrer without leave to amend—which the Court of Appeal construed as a final judgment of dismissal (*Wilson* v. *Sharp* (1954) 42 Cal.2d 675, 677 [268 P.2d 1062])—we accept as true the facts alleged by plaintiffs. (*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137].) "[A] general demurrer admits the truth of all material allegations in the complaint [citation]; . . . the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court [citations]; and . . . plaintiff need only plead facts showing that he may be entitled to some relief [citation]." (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

engaged in other lewd conduct with the children. Each child was molested at the clinic offices, and Robert was also molested elsewhere.

The mothers confronted the owner and the clinical director of the clinic with this information. They were told that the therapist had done nothing "illegal" but that he would no longer be assigned minor patients. The therapist later wrote a letter of "explanation" to the parents, in which he stated he would no longer treat minor patients and would himself undergo psychotherapy.

The mothers of Robert and Phillip brought suit against the clinic, its owner, its clinical director, and the treating therapist for negligent infliction of emotional distress, alleging that the molestation of their sons had caused them serious mental and emotional suffering and further disruption of their family relationships.[2] The cause of action pled by Robert's mother, identical in all substantive respects to that of Phillip's mother, is set forth here verbatim, as the scope of the allegations is critical to our review of the matter.

"60. At all times herein mentioned, plaintiff MARLENE [F.] was the mother of minor plaintiff ROBERT [F.] MARLENE [F.] went to AFFILIATED in order to obtain psychological counselling for herself and her family, including her son ROBERT [F.]

"61. Defendant [therapist] knew that MARLENE [F.] was the mother of ROBERT [F.], and that she was concerned about his mental and emotional health. [The therapist] undertook to treat both MARLENE [F.] and ROBERT [F.] for their intra-family difficulties by providing psychotherapy to both plaintiffs. MARLENE [F.] was treated personally by [the therapist], and also provided consent to allow [him] to render psychotherapy to her son, ROBERT [F.] MARLENE [F.] was billed for [the therapist's] services to her and her son by AFFILIATED.

"62. By undertaking to treat both ROBERT [F.] and MARLENE [F.], [the therapist] had a duty of due care to both patients. He was aware of the relationship between the patients, and further believed that one of the problems in the family arose from the relationship between MARLENE [F.] and ROBERT [F.]

"63. Therefore, it was reasonably foreseeable and easily predictable that [the therapist's] battering and sexually molesting ROBERT [F.] would lead

[2] The mother of Eric R. did not bring such a claim, and neither she nor he is a party to this appeal.

to serious emotional distress in MARLENE [F.] Because the risk of harm to MARLENE [F.] was reasonably foreseeable and easily predictable, defendants herein owed her a duty to exercise due care in diagnosing and treating her son, ROBERT [F.]

"64. Defendant [therapist] knew, or in the exercise of reasonable care, should have known, that his lewd and lascivious conduct toward ROBERT [F.] was likely to injure plaintiff MARLENE [F.] By committing lewd and lascivious acts upon the body of minor plaintiff ROBERT [F.], [the therapist] breached his duty of care to MARLENE [F.]

"65. [The other] [d]efendants . . . knew, or in the exercise of reasonable care, should have known that their failure to properly investigate and supervise [the therapist] in order to prevent the acts and occurrences alleged and their failure to report and inform the proper persons and/or agencies, was likely to injure plaintiff MARLENE [F.] By failing to properly supervise and investigate defendant [therapist], and by failing to report and inform the proper persons and/or agencies, [these] defendants . . . breached their duty of care to MARLENE [F.] Moreover, [these] defendants . . . are liable for the actions of [the therapist], since [he] was their agent . . . .

"66. As a direct and proximate result of the intentional and negligent acts and/or omissions of the defendants, and each of them, plaintiff MARLENE [F.] personally observed the mental, physical, and emotional injuries suffered by ROBERT [F.] at the time of the occurrences alleged herein, and thereafter; and as a further direct and proximate result of said acts and/or omissions, plaintiff MARLENE [F.] sustained serious and severe emotional disturbance and shock, and injury to her nervous system, all of which has caused, and continues to cause, and will cause in the future, serious mental and emotional suffering, as well as disruption in her intra-family relationship. These injuries are all to her general damage in an amount in excess of the minimum jurisdiction of this Court.

"67. As a further direct and proximate result of the negligent acts and/or omissions of the defendants, and each of them, plaintiff MARLENE [F.] was reasonably required to, and did, incur medical and incidental expenses for the examination, treatment, and care of the aforesaid injuries, the exact amount of which is unknown at this time. Plaintiff is informed and believes and thereon alleges that she in the future will be reasonably required to incur similar obligations. Plaintiff asks leave to amend this complaint to insert the amount of medical and incidental expenses incurred, and expected to be incurred by her as the result of these injuries, when such have been ascertained.

"68. The aforementioned acts and/or omissions of defendants were willful, wanton, malicious, oppressive and in conscious disregard of the rights and safety of others, and justify the awarding of exemplary and punitive damages."

All defendants successfully demurred to this cause of action. The Court of Appeal affirmed, acknowledging that the mothers had suffered from the mistreatment of their children but reasoning that they failed to state a claim under either the "bystander witness" theory of *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] or the "direct victim" theory of *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518], because they were neither present at the time the torts were committed nor the actual targets of the therapist's unprofessional conduct. We granted review to determine whether the mothers of Robert and Phillip, although neither bystander witnesses nor the immediate objects of the tortious conduct, could state claims for the negligent infliction of emotional distress.[3]

## DISCUSSION

■ "[T]he *negligent* causing of emotional distress is not an independent tort but the tort of *negligence* . . . ." (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 838, p. 195.) "The traditional elements of duty, breach of duty, causation, and damages apply. [¶] Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability." (*Slaughter* v. *Legal Process & Courier Service* (1984) 162 Cal.App.3d 1236, 1249 [209 Cal.Rptr. 189].)

---

[3] Although the mother of Eric R. did not assert such a claim, she did bring suit on behalf of her child, as did the mothers of Robert and Phillip, against the therapist for battery, negligence per se (see Pen. Code, §§ 288 [lewd or lascivious acts with child under age 14], 11166 [duty of health practitioner to report instances of child abuse]) and professional malpractice, and against the other defendants for negligence (both directly in hiring and supervising an employee they allegedly knew had molested another child and vicariously under the doctrine of respondeat superior) and negligence per se (see Pen. Code, § 11166), seeking compensatory and punitive damages. As a result of other rulings of the trial court and the Court of Appeal that are not challenged in this appeal, all of the children's causes of action—except the claims of negligence per se for failure to report the molestations—remained to go to trial.

Because no issues as to vicarious liability were raised in the petition for review, and because defendants did not request in their answers that we reach any other issues, we need not consider in this case the viability of any claims that the clinic is liable for the therapist's torts under the doctrine of respondeat superior. (Compare *Rita M.* v. *Roman Catholic Archbishop* (1986) 187 Cal.App.3d 1453, 1461 [232 Cal.Rptr. 685]; and *Lund* v. *Caple* (1984) 100 Wn.2d 739 [675 P.2d 226, 228-229] with *Richard H.* v. *Larry D.* (1988) 198 Cal.App.3d 591, 596 [243 Cal.Rptr. 807]; *Simmons* v. *United States* (9th Cir. 1986) 805 F.2d 1363, 1369; and *Marston* v. *Minneapolis Clinic of Psychiatry* (Minn. 1982) 329 N.W.2d 306, 310-311.)

In *Dillon* v. *Legg, supra,* 68 Cal.2d 728, we held that a mother could recover from a negligent motorist for the emotional distress she suffered from witnessing the accident that caused the death of her child. Recognizing that foreseeability of the injury was but the threshold element in determining the existence of a duty of care, we identified a number of factors designed to limit the scope of the duty to "exclud[e] the remote and unexpected" and to specify the class of potential plaintiffs entitled to recover for the emotional distress occasioned by witnessing the injury of another. (*Id.,* at pp. 740-741.)

In *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, we held that a husband could recover from his wife's doctor for the emotional distress he suffered from the misdiagnosis of his wife as having syphilis and the advice that he be physically examined as well. Reasoning that the husband was a "direct victim" of the tort in view of the nature of the doctor's conduct, we held that defendants owed him a duty of care.[4] (*Id.,* at p. 923.)

As in *Dillon* v. *Legg, supra,* 68 Cal.2d 728, we stressed certain inherently limiting factors, in particular that the doctor instructed the wife to tell her husband of the diagnosis and to advise him to be examined as well, and that the doctor's error was singularly likely to result in marital discord and in emotional distress to the husband. "Because the disease is normally transmitted only by sexual relations, it is rational to anticipate that both husband and wife would experience anxiety, suspicion, and hostility when confronted with what they had every reason to believe was reliable medical evidence of a particularly noxious infidelity. [¶] We thus agree with plaintiff that the alleged tortious conduct of [the doctor] was directed to him as well as to his wife." (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at p. 923.)

Our decision did not, however, purport to create a cause of action for the negligent infliction of emotional distress based solely upon the foreseeability that serious emotional distress might result. It is plainly foreseeable, for example, that close family members of a patient would suffer severe emotional distress if told the patient had been diagnosed as suffering from a

---

[4] In so ruling, we declined to hold the factors identified in *Dillon* v. *Legg, supra,* 68 Cal.2d 728, to be the sole means of determining the existence of a duty of care. We stressed, rather, that the *Dillon* guidelines served only to define the scope of duty where a plaintiff sought to recover damages suffered as the percipient witness to another's injury. (*Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d at pp. 922-923.) Here, as in *Molien,* that the mothers do not meet the requirements of *Dillon* is not controlling, for the *Dillon* principles represent but the means for resolving the duty question in the specific factual context of the "bystander witness" scenario and have no direct application to the case before us.

terminal illness, but without more, the patient's physician would not be liable for that distress whether or not the diagnosis was erroneous. (Cf. *Justus* v. *Atchison* (1977) 19 Cal.3d 564, 585 [139 Cal.Rptr. 97, 565 P.2d 122].) ■ Damages for severe emotional distress, rather, are recoverable in a negligence action when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two. Our decision in *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, acknowledged this, and permitted recovery for the emotional distress suffered by the husband when his wife's doctor not only erroneously diagnosed the wife as suffering from a sexually transmitted disease but affirmatively acted to have that misdiagnosis communicated to her husband. By directing the husband be told of a diagnosis that foreseeably would disrupt the marital relationship and require the husband to be physically examined, the doctor assumed a duty to convey accurate information and the husband accordingly was a "direct victim" of the doctor's negligence.[5]

■ In the present case, the complaint explicitly and expressly alleged that the mothers of Robert and Phillip, as well as the children, were patients of the therapist; specifically, that he "undertook to treat both [mother and son] for their intra-family difficulties by providing psychotherapy to both . . . ." It further alleged that the therapist "was aware of the relationship between the patients" and that he "believed that one of the problems in the family arose from the relationship between [mother and son]." In other words, the counselling was not directed simply at each mother and son as individuals, but to both in the context of the family relationship. And the complaint alleged that the discovery by the mothers of the therapist's sexual misconduct caused them serious emotional distress, further disrupting that family relationship.

---

[5] Indeed, the doctor might have had the duty to warn the husband even had he not voluntarily assumed one. Other jurisdictions have found the relationship between doctor and patient alone sufficient to impose on the doctor a duty to exercise reasonable care to prevent harm to others as a consequence of the patient's condition. "[A] doctor is liable to persons infected by his patient if he fails to diagnose a contagious disease (*Hoffmann* v. *Blackmon* (Fla.App. 1970) 241 So.2d 752), or, having diagnosed the illness, fails to warn members of the patient's family (*Wojcik* v. *Aluminum Co. of America* (1959) 18 Misc.2d 740 [183 N.Y.S.2d 351, 357-358]; *Davis* v. *Rodman* (1921) 147 Ark. 385 [227 S.W. 612, 13 A.L.R. 1459]; *Skillings* v. *Allen* (1919) 143 Minn. 323 [173 N.W. 663, 5 A.L.R. 922]; see also *Jones* v. *Stanko* (1928) 118 Ohio St. 147 [6 Ohio L.Abs. 77, 160 N.E. 456])." (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 436-437 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) We need not determine here whether the rule of these cases should obtain in all circumstances, but it may help to explain the underpinnings of the duty whose breach allowed the husband to recover for his emotional distress. (See also *Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695, 707 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063].)

In these circumstances, the therapist, as a professional psychologist, clearly knew or should have known in each case that his sexual molestation of the child would directly injure and cause severe emotional distress to his other patient, the mother, as well as to the parent-child relationship that was also under his care. His abuse of the therapeutic relationship and molestation of the boys breached his duty of care to the mothers as well as to the children. (See also *Richard H.* v. *Larry D., supra,* 198 Cal.App.3d at p. 596 [husband of couple consulting psychotherapist for marital counseling stated claim for professional negligence and negligent infliction of emotional distress based on therapist's sexual relations with plaintiff's wife]; *Rowe* v. *Bennett* (Me. 1985) 514 A.2d 802, 804, 806-807 [patient stated claim against therapist for breach of duty of care and negligent infliction of emotional distress based on therapist's involvement with patient's companion].)

In ruling that liability may attach here for the mother's injuries, we take no dramatic step. In the *Richard H.* case, the court observed: "It is readily foreseeable that a patient seeing a psychiatrist for purposes of stabilizing and improving his or her marriage would feel betrayed and suffer emotional distress upon learning that the psychiatrist has, during the course of the patient's treatment, been engaging in sexual relations with the patient's spouse." (*Richard H.* v. *Larry D., supra,* 198 Cal.App.3d at p. 596.) It is no less foreseeable that a mother who consults a therapist for purposes of stabilizing and improving her relationship with her son, and who commits herself and her son to the therapist's care, would feel betrayed and suffer emotional distress upon learning that the therapist had, during the course of the treatment, sexually molested her son.[6]

It bears repeating that the mothers here were the patients of the therapist along with their sons, and the therapist's tortious conduct was accordingly directed against both. They sought treatment for their children—as they had the right, and perhaps even the obligation, to do—and agreed to be treated themselves to further the purposes of the therapy.[7] They were plainly entitled to recover for the emotional distress they suffered.

---

[6]Indeed, the children's mothers might have proceeded solely on the theory that the therapist's acts constituted professional negligence as to them in their own position as his patients. (See *Richard H.* v. *Larry D., supra,* 198 Cal.App.3d at p. 596; see also *Horak* v. *Biris* (1985) Ill.App.3d 140 [474 N.E.2d 13, 58 A.L.R.4th 965]; *Mazza* v. *Huffaker* (1983) 61 N.C.App. 170 [300 S.E.2d 833].) As the issue is not raised here, we have no need to consider whether the provisions of the Medical Injury Compensation Reform Act (MICRA) (Stats. 1975, Second Ex. Sess., ch. 1, § 1, p. 3949; Stats. 1975, Second Ex. Sess., ch. 2, § 1, p. 3978) apply to the mothers' claims.

[7]In light of the facts of this case, we need not consider the validity of the theory advanced by one Court of Appeal, which premises a duty to parents solely on the basis of a contract they enter into for the care of their child and then permits recovery for emotional distress if that care is not properly rendered. (Cf. *Andalon* v. *Superior Court* (1984) 162 Cal.App.3d

CONCLUSION

We conclude that the mothers stated a cause of action for the negligent infliction of emotional distress against the therapist who molested their sons in the course of a professional relationship involving both mother and son.

The judgment of the Court of Appeal is reversed to that extent, and the Court of Appeal is directed to enter judgment reversing the trial court order sustaining defendants' demurrer to the sixth and twelfth causes of action of the fifth amended complaint and to remand the matter for further proceedings consistent with the views expressed in this opinion.

Mosk, J., Broussard, J., and Kaufman, J., concurred.

ARGUELLES, J.*—A majority of the court concludes that the plaintiff mothers can and have stated a cause of action here for the negligent infliction of emotional distress. Obviously, I agree. I write separately in addition to the majority opinion, however, to address another theory of recovery here, one that I believe is squarely raised on the facts and the pleadings of this case, and that should not go unmentioned.[1] In brief, I believe that what we have before us is a case of outrageous conduct, atrocious and offensive acts committed within a relationship of trust, that might permit the imposition of liability for the intentional infliction of emotional distress, in addition to the other theories available.[2]

---

600, 611 [208 Cal.Rptr. 899]; and *Newton* v. *Kaiser Foundation Hospital* (1986) 184 Cal.App.3d 386, 392 [228 Cal.Rptr. 890] with *Martinez* v. *County of Los Angeles* (1986) 186 Cal.App.3d 884, 891-892 [231 Cal.Rptr. 96].) In the present case, the existence of a contract to provide care for the children *bolsters* the mothers' showing that the therapist also owed them a duty of care, but their claim does not rest solely, or even necessarily, on that contract.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

[1] "[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory. The courts of this state have, of course, long since departed from holding a plaintiff strictly to the 'form of action' he has pleaded and instead have adopted the more flexible approach of examining the facts alleged to determine if a demurrer should be sustained. (See, e.g., *MacIsaac* v. *Pozzo* (1945) 26 Cal.2d 809, 815 [161 P.2d 449]; *Zellner* v. *Wassman* (1920) 184 Cal. 80, 88 [193 P. 84]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 301, p. 1974.)" (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817]; see also *Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357]; *Smith* v. *Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 630 [223 Cal.Rptr. 339].)

[2] As does the majority, I accept as true for present purposes the facts as alleged in the complaint. (See *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137]; *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)

Intentional infliction of emotional distress first found recognition as an independent tort in this state in *State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330 [240 P.2d 282]. In a unanimous opinion by Associate Justice (subsequently Chief Justice) Traynor, the court deemed it time to abandon the prior rule that "the interest in emotional and mental tranquility is not one that the law will protect from invasion in its own right." (*Id.,* at p. 336.) Noting that recovery had been allowed where the intentional infliction of emotional distress produced physical injury (*id.,* at p. 337) and that damages for mental suffering could constitute part of the recovery where a cause of action was otherwise established (*id.,* at p. 338), the court found it anomalous to deny recovery simply because the defendant had not committed some other recognized tort or because his intentional misconduct had not caused physical injury. (*Ibid.*) Squarely rejecting the argument that administrative difficulties of proof justified the denial of relief (*id.,* at pp. 338-339), the court concluded that "a cause of action is established when it is shown that one, in the absence of any privilege, intentionally subjects another to the mental suffering incident to serious threats to his physical well-being, whether or not the threats are made under such circumstances as to constitute a technical assault." (*Id.,* at p. 336.)

In the years since *Siliznoff,* the tort has become firmly embedded in the law of this state, and the elements of the prima facie case are beyond question: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (*Cervantez* v. *J. C. Penney Co.* (1979) 24 Cal.3d 579, 593 [156 Cal.Rptr. 198, 595 P.2d 975]; see Rest.2d Torts, § 46(1).) The one-time requirement that the plaintiff have suffered physical injuries from the defendant's conduct no longer obtains "in cases involving extreme and outrageous intentional invasions of one's mental and emotional tranquility." (*Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d at p. 498.) And, as the above authorities make clear, recovery is not limited to cases in which the defendant in fact *intended* to cause emotional distress, but includes those cases in which the defendant acted with reckless disregard of the probability such distress would result.

Courts have, in a variety of contexts, recognized liability for the intentional infliction of emotional distress based on conduct no more egregious than is present here. (See Annot., Modern Status of Intentional Infliction of Mental Distress as Independent Tort: "Outrage" (1985) 38 A.L.R.4th 998.) In this state alone, such liability may be imposed for a security guard's false arrest of a store customer on shoplifting charges (*Cervantez* v. *J. C. Penney*

*Co., supra,* 27 Cal.3d 579), for racial epithets directed against an employee by his coworkers and supervisors (*Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d 493), and for an insurer's attempt to deprive its insured of benefits due under a disability policy (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]). The sexual molestation of a child is at least as serious a matter and is plainly outrageous under any definition of the term. (See, e.g., *Croft by Croft* v. *Wicker* (Alaska 1987) 737 P.2d 789, 793.)

But the tort, although recognized and applicable to a broad range of acts, is less frequently invoked to permit recovery for the emotional distress suffered by one not the immediate target of the defendant's conduct. Recovery has in general been limited, and the tort has ever narrowing parameters depending upon the potential plaintiff.

As framed in the Restatement Second of Torts section 46(1), recovery by the immediate target of the defendant's conduct tracks the principles expressed in *Siliznoff, supra,* 38 Cal.2d 330: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Section 46(2), however, reflects the limitations on recovery by others: "Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress [¶] (a) *to a member of such person's immediate family who is present at the time,* whether or not such distress results in bodily harm, or [¶] (b) to any other person who is present at the time, if such distress results in bodily harm." (Italics added.)

The requirement of presence is justified primarily on the basis of perceived practical and administrative difficulties similar to those rejected in *Siliznoff, supra,* 38 Cal.2d at pages 338-339, as a reason for retaining the requirement of physical injury. "The limitation may be justified by the practical necessity of drawing the line somewhere, since the number of persons who may suffer emotional distress at the news of an assassination of the President is virtually unlimited, and the distress of a woman who is informed of her husband's murder ten years afterward may lack the guarantee of genuineness which her presence on the spot would afford." (Rest.2d Torts, § 46, com. *l,* p. 79.) But the Restatement is not absolute on this point; by a caveat to section 46, it leaves open the possibility of recovery in other situations: "The Institute expresses no opinion as to whether there may not be other circumstances under which the actor may be subject to liability for the intentional or reckless infliction of emotional distress." And the Restatement makes clear that the presence requirement is the subject of this caveat:

"The Caveat is intended . . . to leave open the possibility of situations in which presence at the time may not be required." (Rest.2d Torts, § 46, com. *l,* p. 79.)

Courts have been slow to accept this invitation to determine whether the presence requirement should be dispensed with in certain situations. The prevailing rule appears still to be that absent family members may not recover for the distress caused by outrageous conduct aimed at another member of the family,[3] but there is authority for the contrary point of view as well.[4] We obtain little guidance from any of these cases, however, as most simply invoke or ignore the presence requirement without discussion, and none thoroughly considers whether the requirement plays a necessary role in the circumstances of a particular case. I would suggest that the fact a parent is not present when a child is molested by one occupying a position of trust should not stand as a bar to a cause of action for the intentional infliction of emotional distress, because no purpose is served by the presence requirement in such a case, whatever validity it might have in other situations.

In *Delia S. v. Torres, supra,* 134 Cal.App.3d 471, the Court of Appeal allowed a husband to recover for intentional infliction of emotional distress when his wife was raped by his friend. "One may reasonably infer that the

---

[3] See, e.g., *H.L.O. by L.E.O. v. Hossle* (Iowa 1986) 381 N.W.2d 641, 644-645 [54 A.L.R.4th 85] (parents not present when children were sexually abused by neighbor could not recover for emotional distress); *Gilbreath v. St. Paul Fire & Marine Ins.* (1984) 141 Ariz. 92 [685 P.2d 729, 733-734] (dictum; parents not present when child was sexually abused at day care center could not recover for emotional distress); *Lund v. Caple* (1984) 100 Wn.2d 739 [675 P.2d 226, 228-229] (husband not present when wife had sexual relations with pastoral counselor could not recover for emotional distress); *Garland v. Herrin* (2d Cir. 1983) 724 F.2d 16, 19 (applying New York law and reversing on this ground, among others, trial court ruling [(S.D.N.Y. 1983) 554 F.Supp. 308] that New York courts would permit recovery by parents not present when daughter was beaten to death in her bed at home); *Lauver v. Cornelius* (1981) 85 A.D.2d 866 [446 N.Y.S.2d 456, 457] (parents not present when child was sexually molested by neighbor's child could not recover for emotional distress); *Miller v. Cook* (1978) 87 Mich.App. 6 [273 N.W.2d 567, 569-570] (parents not present when child was beaten by teacher at school could not recover for emotional distress); see also Annot., Sexual Child Abuser's Civil Liability to Child's Parents (1987) 54 A.L.R.4th 93, 96-97.

[4] See, e.g., *Delia S. v. Torres* (1982) 134 Cal.App.3d 471, 483-484 [184 Cal.Rptr. 787] (husband not present when wife was raped by his close friend allowed to recover for intentional infliction of emotional distress); *Cahalin v. Rebert* (Pa.Dist.Ct. 1979) 10 Pa. D. & C.3d 142, 150 (custodial parent not present when his former spouse kidnapped daughter stated action for intentional infliction of emotional distress); *Schurk v. Christensen* (1972) 80 Wn.2d 652 [497 P.2d 937, 940-941] (parents not present when their child was molested by baby-sitter allowed to proceed on theory of intentional infliction of emotional distress); see also *Croft by Croft v. Wicker, supra,* 737 P.2d at pages 792-793 (parents nearby when houseguest molested their daughter stated claim for intentional infliction of emotional distress although they did not witness actual incident).

violation and rape of one's wife, particularly by a friend, would have . . . profound and extreme emotional consequences. Thus, the wrong for which recovery was sought was personal to [the husband]. . . . [I]t is his relationship to the object of the act and the effect of the transgression on him personally which gives rise to the cause of action." (*Id.,* at p. 484.) One may similarly infer that the molestation of a child by the therapist to whose care the parent committed the child would have equally "profound and extreme emotional consequences" and that the presence requirement is not needed either to ensure the genuineness of the claim or to place reasonable bounds on recovery.

In *Nancy P.* v. *D'Amato* (1988) 401 Mass. 516 [517 N.E.2d 824], the Supreme Judicial Court of Massachusetts touched on this question in considering a claim for intentional infliction of emotional distress made by a mother whose daughter was molested by a neighbor. Although recovery was denied, primarily because there was insufficient evidence of severe emotional distress attributable to the molester's conduct, the court considered the import of Restatement Second of Torts section 46(2) and the caveat thereto and noted that "[a] custodial parent of a young child sexually abused by a trusted adult neighbor might present a particularly appealing case for not imposing a presence requirement." (*Nancy P.,* at p. 828.) I would agree, and would suggest that the case of a mother whose son was sexually abused by the therapist to whom she entrusted her child for treatment presents an even more compelling case.

In this vein, I find other significant points in the Restatement's commentary. First, the Restatement makes the point that "[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him the actual or apparent authority over the other, or power to affect his interests." (Rest.2d Torts, § 46, com. *e,* p. 74.) The abuse of such authority in a relationship of trust also compounds the outrageousness of given conduct and makes less essential the presence requirement to limit the universe of potential claimants. Second, the Restatement also notes that "[t]he extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." (Rest.2d Torts, § 46, com. *f,* p. 75.) This factor is particularly relevant to the abuse of the therapeutic relationship, although the degree to which the therapist had knowledge of some particular mental condition of each mother would remain a matter for further inquiry at trial. Finally, the very nature of the conduct at issue in this case substantiates the genuineness of the mothers' claims and renders less necessary the practical limitation of the presence requirement, just as

the enormity of the conduct at issue in a given case may render less significant the value of bodily harm in demonstrating that the distress was sufficiently severe to permit recovery. (Rest.2d Torts, § 46, com. *k*, p. 78; see 2 Harper et al., The Law of Torts (2d ed. 1986) § 9.1, p. 610.)

These factors render unnecessary the rigid presence requirement either as a practical limitation or as a means of verifying the authenticity of the mothers' claims. The allegations of the complaint encompass the essential elements of the tort of intentional infliction of emotional distress—that severe distress was actually and proximately caused by extreme and outrageous conduct of the therapist undertaken with reckless disregard of the probability of causing such distress. (*Cervantez* v. *J. C. Penney Co., supra,* 24 Cal.3d at p. 593.) That the mothers framed their allegations in terms of negligent infliction of emotional distress is not dispositive. (*Barquis* v. *Merchants Collection Assn., supra,* 7 Cal.3d at p. 103.) Nor do I see any other reason why the mothers should not be entitled to recover for the intentional infliction of emotional distress here.

The principle is well established that "[e]veryone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care . . . ." (Civ. Code, § 1714, subd. (a).) "[I]n the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy. [Citations.] [¶] A departure from this fundamental principle involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112-113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

These principles, although normally invoked in evaluating the scope of liability for the negligent breach of a duty of care, strike me as relevant here as well in determining whether the fundamental principle of responsibility for the consequences of one's acts should be abrogated. Although I would suggest that liability for the consequences of willful acts ought, for the very reason that the acts were willful, to be broader than that imposed for the negligent failure to meet a duty of care, the *Rowland* factors at least establish a bottom line. That is, if those factors do not justify limiting liability,

there is no need to consider whether a greater showing should be required to cut off liability for the consequences of a volitional act.

Taken as a whole, these factors support the mothers' entitlement to sue here for the emotional distress they suffered. The harm was foreseeable; the mothers suffered distress (the extent of which is obviously a question for the jury); the injury suffered by the mothers is closely, indeed immediately, connected with the therapist's conduct; moral blame plainly attaches to his conduct; and the burden on the defendant is nothing that society would conclude should not be borne. While it is true that insurance may not be readily available for the risk and that imposing liability may serve but slightly the policy of preventing future harm as the children's own claims more directly serve this end, even these factors do not suggest strong reason for declining to impose liability for the emotional distress naturally flowing from the therapist's misconduct. Denominating the therapist's acts as an intentional tort might perhaps affect the prospects of insurance coverage, but his underlying acts were plainly willful however one characterizes the tort and, as to the mothers, the point is not that he acted with the specific intent to cause harm but that he acted with reckless disregard of the possibility they would be injured.

I would stress that I do not propose here some unbounded theory of liability for parental distress occasioned by injuries, even intentional injuries, to a child. I will not attempt to determine whether—and, if so, what—other intentional torts might justify imposing liability on the tortfeasor for the infliction of emotional distress. A playground fight is one matter; a brutal assault on a defenseless child might be another. After all, an essential element of the tort is "extreme and outrageous" conduct. (*Cervantez* v. *J. C. Penney Co., supra,* 24 Cal.3d at p. 593.) Nor would I now attempt to definitively determine what class of persons might recover in which circumstances, although I agree that recovery ought at the least to be limited to "a member of [the injured] person's immediate family" (Rest.2d Torts, § 46(2)(a), p. 72), and I might question whether liability should run further than to the parents or guardians of an abused child. But I see no principled basis for precluding a cause of action for the intentional infliction of emotional distress on facts similar to those of this case. That the mothers were not present when their children were molested is simply irrelevant, and the therapist's molestation of their sons was outrageous conduct arguably actionable as the intentional, as well as the negligent, infliction of emotional distress. Although the two torts have different elements (see *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 165, fn. 5 [216 Cal.Rptr. 661, 703 P.2d 1]), there is no reason why both may not be established in a single case if the harm results from extreme and outrageous conduct that also breaches a

duty of care. (See *id.,* at p. 196, fn. 13 (conc. and dis. opn. of Bird, C. J.); cf. *Waters* v. *Bourhis* (1985) 40 Cal.3d 424, 434 [220 Cal.Rptr. 666, 709 P.2d 469] [psychiatrist's sexual misconduct with patient may constitute intentional tort as well as malpractice].) I think this is such a case.

Mosk, J., concurred.

**EAGLESON, J.**—I concur in the judgment. I do so because the complaint alleges facts to establish a psychotherapist/patient relationship between the plaintiff mothers and the defendants. That relationship gives rise to a duty on the part of defendants to refrain from conduct that foreseeably may aggravate the condition for which treatment was sought or inhibit the therapist's ability to successfully treat the patient. Because it is foreseeable that sexual misconduct with another family member who is also under treatment by the therapist will do so, that misconduct is professional malpractice. (*Richard H.* v. *Larry D.* (1988) 198 Cal.App.3d 591, 596 [243 Cal.Rptr. 807]; *Mazza* v. *Huffaker* (1983) 61 N.C.App. 170 [300 S.E.2d 833, 837-838]; *Horak* v. *Biris* (1985) 130 Ill.App.3d 140 [474 N.E.2d 13, 58 A.L.R.4th 965].)

I do not, however, agree that a "direct victim" theory of liability or *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518], has any relevance to the plaintiffs' right to recover. The conclusion of the trial court that the mothers had not stated a cause of action under *Molien* was correct. The court erred only in failing to recognize that the allegations of the complaint did state a cause of action for professional malpractice.

As the majority recognize, *Molien* did not establish an independent cause of action for infliction of serious emotional distress. Since there was no breach of a professional relationship between the defendant and the plaintiff, the justification for permitting recovery in that case was the defendant's assumption of a duty to the plaintiff when he directed that his diagnosis of a sexually transmitted disease be communicated to plaintiff.

Although purporting to deny the existence of a cause of action for negligent infliction of emotional distress, by suggesting that *Molien* is authority for, or somehow relevant to, permitting recovery here, the majority in fact perpetuate the mistaken view that such a cause of action may exist. (See, e.g., *Accounts Adjustment Bureau* v. *Cooperman* (1984) 158 Cal.App.3d 844, 848 [204 Cal.Rptr. 881]; Fischer, *Tort Law: Expanding the Scope of Recovery Without Loss of Jury Control* (1983) 11 Hofstra L.Rev. 937, 951; Schwartz, *Economic Loss in American Tort Law: The Examples of J'Aire*

*and of Products Liability* (1986) 23 San Diego L.Rev. 37, 39, fn. 13; Comment, *Negligent Infliction of Emotional Distress: New Horizons After Molien v. Kaiser Foundation Hospitals* (1982) 13 Pacific L.J. 179, 180; Comment, *Negligent Infliction of Emotional Distress as an Independent Cause of Action in California: Do Defendants Face Unlimited Liability?* (1982) 22 Santa Clara L.Rev. 181; Prosser and Keeton on Torts (5th ed. 1984) pp. 364-365.)

The majority's reliance on *Molien* in this case, and its suggestion that permitting recovery is somehow novel although not a "dramatic step" are inexplicable. The explanation in *Molien* that the plaintiff was a "direct victim" did no more than distinguish and explain why the *Molien* plaintiff had not stated a cause of action as a "bystander" victim whose emotional distress injury was caused by observation of an injury to another. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) Identification of the plaintiff as a "direct victim" of the defendant's negligence did not, however, explain the source of the duty which obligated the defendant for emotional distress damages—recovery which is normally permitted only as an item of "parasitic" damages when the defendant is liable for another injury. The majority's explanation here that the therapist's "tortious conduct" was directed at both the children and their mothers suffers from the same defect. It does not identify any tort other than negligence that supports the recovery of damages for emotional distress, and thus supports negligent infliction of emotional distress as an independent cause of action.

Neither reliance on, nor analogy to, *Molien* is appropriate in this case. Each of the mothers stated a cause of action for professional malpractice. When a professional relationship involves counseling or therapy for the purpose of treating an emotional or psychiatric condition, the right to recover for malpractice which worsens that condition and in so doing causes severe emotional distress is clear. Indeed, the majority cite ample authority for such recovery, but for reasons that are unclear, refuse to acknowledge that professional malpractice is the sole basis for holding that the mothers stated a cause of action in their complaint.

I cannot join the majority in suggesting that *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, is relevant here, or has any application beyond its facts. I agree, however, that the plaintiff mothers have stated a

cause of action—for professional malpractice—in which damages for severe emotional distress may be recovered. I, therefore, concur in the judgment.

Lucas, C. J., and Panelli, J., concurred.