[No. C019426. Third Dist. Feb. 16, 1996.]

ADELA R. MERCADO, Plaintiff and Appellant, v.
THOMAS LEONG, Defendant and Respondent.

**COUNSEL**

Drivon & Tabak, Stewart M. Tabak, Harrington, Garretson & Connolly and Steve G. Garretson for Plaintiff and Appellant.

Schuering, Zimmerman, Scully & Nolen, Thomas J. Doyle and Theodore D. Poppinga for Defendant and Respondent.

**OPINION**

**BROWN, J.**—Plaintiff, Adela Mercado, appeals from a judgment in favor of her obstetrician, defendant Thomas Leong, in an action seeking damages

for serious emotional distress resulting from a negligent delivery which inflicted permanent nerve damage upon her child. The trial court entered judgment in defendant's favor, notwithstanding a jury verdict awarding damages to plaintiff. In doing so, the trial court concluded it was bound by the decision in *Bro* v. *Glaser* (1994) 22 Cal.App.4th 1398 [27 Cal.Rptr.2d 894], which requires a finding of outrageous conduct on the part of the defendant to award damages for negligent infliction of emotional distress, and the jury in this case did not so find. On appeal, plaintiff contends the trial court erred by applying the two-part test formulated in *Bro* and instead should have relied on the rule in *Burgess* v. *Superior Court* (1992) 2 Cal.4th 1064 [9 Cal.Rptr.2d 615, 831 P.2d 1197] in determining the validity of her claim for negligent infliction of serious emotional distress. We agree with plaintiff and shall reverse.

## FACTS

Defendant provided prenatal care to plaintiff and attended her for part of her labor on the morning of her delivery. Defendant checked plaintiff at 7:15 a.m., prescribed pain medication for her at 7:40 a.m., then left to perform elective surgery on another patient. Defendant was aware plaintiff had several risk factors which could indicate a difficult delivery; however, he did not anticipate any problems and was hoping to be finished with his surgical procedure and be back to do the delivery. Defendant did not arrange for another specialist to be available while he was gone.

A nurse called defendant about an hour later to tell him plaintiff was ready to deliver. Defendant told her to call Dr. Wong, a family practitioner, to assist in the birth. When Dr. Wong arrived, the delivery had begun without apparent problem; however, it soon became evident there was shoulder dystocia, i.e., the baby's shoulder was firmly lodged behind the pubic bone, preventing a routine delivery.

In order to reduce the dystocia, Dr. Wong ordered the nurses to apply fundal pressure, i.e., pressure at the top of the uterus. However, fundal pressure is contraindicated in dystocial reduction because it further impacts the shoulder against the bone, causing permanent damage to the brachial plexus, i.e., the bundle of nerves to the arm muscles, rather than the transient damage associated with a dystocia reduced by appropriate means. A specialist, like defendant, would have known this. As a result of the improper procedure, the child suffered permanent damage to his left arm.

At trial, the parties discussed whether the jury should be instructed on outrageous conduct as suggested by the *Bro* decision. The parties agreed to

handle the issue by providing a special verdict form, permitting the jury to make a separate determination of outrageous conduct after determining the negligence issues.

The jury found defendant was negligent in caring for plaintiff, who suffered mental and emotional distress as a result, and awarded her $40,000 in damages. The jury further found defendant's negligent conduct was not outrageous.

Based on the latter finding, defendant moved for judgment notwithstanding the verdict, arguing that, under *Bro*, plaintiff could not recover for emotional distress. Plaintiff opposed the motion, arguing *Bro* was distinguishable on its facts and that the Supreme Court's decision in *Burgess* controlled this case.

The trial court rejected plaintiff's attempts to distinguish *Bro* on its facts and, concluding it was bound by *Bro*'s holding that a defendant's conduct had to be outrageous for a plaintiff to recover for a claim of pure emotional distress without physical injury, granted defendant's motion for judgment. Accordingly, judgment was entered in defendant's favor on plaintiff's claim.

## DISCUSSION

Plaintiff, in arguing the trial court erred in granting defendant's motion for judgment, reasserts her claim that recovery in this case is governed by *Burgess*, not *Bro*. We agree.

In *Burgess*, a mother sued to recover for severe emotional distress negligently inflicted by the physician who injured her child during labor and delivery. The *Burgess* court determined the physician owed a duty of care to the mother but for policy reasons, placed limits on recoverable damages.

The court stated: "We have repeatedly recognized that '[t]he *negligent* causing of emotional distress is not an independent tort, but the tort of *negligence*. [Citation.] The traditional elements of duty, breach of duty, causation, and damages apply. [¶] Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability.' " (*Burgess* v. *Superior Court, supra*, 2 Cal.4th at p. 1072, original italics.)

Earlier decisions of the Supreme Court limited the theories of recovery for serious emotional distress damages in a negligence action to the "bystander"

theory (*Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]) and the "direct victim" theory (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]). *Burgess* observed that, in bystander cases, where a percipient witness to an injury seeks to recover, a defendant has a "duty not to negligently cause emotional distress to people who observe conduct which causes harm to another." (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1073.) Because such a duty could be limitless, the court, as a matter of policy, placed narrow limits on the class of bystanders who could recover. (*Ibid.*) However, in direct victim cases, "damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.'" (*Ibid.*) Thus, the bystander limitations are unnecessary and "well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case." (*Ibid.*)

*Burgess* rejected any reading of the decision in *Molien,* discussing the direct victim theory, that would permit reliance *solely* on foreseeability to determine this duty, stating " '[I]t is clear that foreseeability . . . alone is not a useful "guideline" or a meaningful restriction on the scope of [an action for damages for negligently inflicted emotional distress.]' " (*Burgess* v. *Superior Court, supra,* 2 Cal.4th at p. 1074.) *Burgess,* however, reaffirmed *Molien*'s basic principles that a plaintiff may recover damages for emotional distress absent physical injury where a defendant negligently breaches a duty arising from a preexisting relationship with the plaintiff. (*Ibid.*)

The *Burgess* court had no difficulty in finding that, due to the nature of the relationship between mother and child, a "physician owes a duty to the pregnant woman with respect to the medical treatment provided to her fetus. Any negligence during delivery which causes injury to the fetus and resultant emotional anguish to the mother, therefore, breached a duty owed directly to the mother." (2 Cal.4th at p. 1076.) *Burgess* found that once the scope of the duty of care from the physician to the mother was understood, the case resolved into an ordinary malpractice claim, in which the plaintiff sought damages for serious emotional distress. (*Id.* at p. 1077.)

Additionally, the *Burgess* court explicitly assessed the policy considerations supporting its direct victim theory. ■ The court "recognized that several factors should be considered in determining the existence of a duty. The factors include: ' "the foreseeability of harm to the plaintiff, the degree of certainty that plaintiff suffered injury, the closeness of the connection

between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." ' " (2 Cal.4th at pp. 1079-1080.) The court concluded foreseeability of emotional distress in the case of negligent delivery was patently obvious, the physician's conduct was closely related to the emotional injury, the degree of moral blame was the same as in any malpractice action, imposition of liability would prevent future harm and the consequences of liability did not present an undue burden in light of legislative limits on liability and judicial limits on the class of potential plaintiffs. (*Id.* at pp. 1080-1084.)

Soon after its decision in *Burgess*, the Supreme Court took the opportunity to refine the direct victim theory in *Huggins* v. *Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124 [24 Cal.Rptr.2d 587, 862 P.2d 148]. In *Huggins*, a pharmacist incorrectly labeled a child's prescription, resulting in a severe overdose. (*Id.* at p. 127.) The child's parents sought to recover for emotional distress as direct victims, arguing the pharmacist's duty of care should extend not only to the infant patient, but also to the infant's parents who had to administer the medication. After reiterating the basic principles explained in *Burgess* and discussing other cases where recovery was permitted because the plaintiff was a patient or, as in *Molien*, where the physician assumed a direct duty to the plaintiff, the court explained that the duty assumed by the pharmacist was to dispense medication to treat the infant and did not run to the parents despite the fact that the parents purchased and administered the medicine and could thus be said to have a preexisting relationship with the pharmacist. (*Id.* at pp. 129-132.) The court stated that nothing in the duty to dispense medication to the infant patient imposed "any legal responsibility upon pharmacists for the emotional well-being of the patient's parents." (*Id.* at p. 132.) The court also assessed the policy concerns, noting that despite foreseeability of injury, the expansion of liability to relatives of the person who had a relationship with the defendant would not only increase insurance costs but also impair "provision of optimal care to the patient." (*Id.* at p. 133.)

The court revisited the question of damages for emotional distress in *Potter* v. *Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965 [25 Cal.Rptr.2d 550, 863 P.2d 795]. In *Potter*, the duty in question was imposed by statute and plaintiffs sought recovery for the emotional distress caused by fear of cancer. Plaintiff's underground water supply had been contaminated by

defendant's improper disposal of toxic wastes. ■ The court again reviewed the concept of duty discussed in *Burgess* and earlier cases stating: "The lesson of these decisions is: unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty. Even then with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests." (*Id.* at p. 985.) A plaintiff can only recover for serious emotional distress, i.e., emotional distress such that " ' "a reasonable [person], normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." ' " (*Id.* at p. 989, fn. 12.) Such damages are unlikely where the interests affected are merely economic. (*Merenda* v. *Superior Court* (1992) 3 Cal.App.4th 1, 10 [4 Cal.Rptr.2d 87].) The court reaffirmed that actual physical injury was not a prerequisite for damages for serious emotional distress, particularly where the circumstances of the case guarantee the genuineness of the claim. (*Potter*, *supra*, at p. 986.)

Because the class of foreseeable plaintiffs would be virtually limitless, the *Potter* court invoked policy considerations to narrow the class and place restraints on recovery. (6 Cal.4th at pp. 991-994, 997.) In fear of cancer cases, the court requires not only that defendant breach the statutory duty owed to plaintiff but also that plaintiff establish the cancer is "more likely than not" to occur due to the toxic exposure. The court concluded the higher threshold for recovery strikes the proper balance between the interests of toxic exposure litigants and burdens on society and judicial administration. (*Ibid.*) It also ensured the seriousness of plaintiff's claim. (*Id.* at pp. 997, 999-1000.) The court addressed the outrageousness of defendant's conduct only in the context of intentional infliction of emotional distress. (*Id.* at pp. 1000-1001.)

Thus, the Supreme Court has made it clear that recovery for damages for serious emotional distress resulting from another's negligent acts is governed by well-understood principles of negligence. These principles narrow the class of potential plaintiffs by limiting the sources of a defendant's duty in "direct victim" cases. Either plaintiff's emotional condition must be an object of the duty assumed or plaintiff's emotional distress must arise from the breach of some other legal duty already owed by defendant. (*Potter* v. *Firestone Tire & Rubber Co.*, *supra*, 6 Cal.4th at p. 985.) Moreover, as the question of whether a defendant owes a duty of care in a particular case is a legal one (*Burgess* v. *Superior Court*, *supra*, 2 Cal.4th at p. 1072), it is not a

matter for a jury, which decides only questions of fact. (*Noll* v. *Lee* (1963) 221 Cal.App.2d 81, 87-88 [34 Cal.Rptr. 223].)

Despite these recent clarifications, application of the duty principle in emotional distress cases remains heterodox. (*Merenda* v. *Superior Court*, *supra*, 3 Cal.App.4th at p. 8.) The effort to create a "tight, coherent, conceptual scheme" from disparate precedents continues to bedevil this area of decisional law. (*Ibid.*)

In *Bro,* the Second Division of the Fourth District addressed the question of recovery for a claim of serious emotional distress by the parents of a newborn whose cheek was nicked during a caesarean delivery. The parents asserted the obstetrician was negligent, not in delivering the infant, but in presenting the infant to them after repairing and bandaging the nick. (*Bro* v. *Glaser*, *supra*, 22 Cal.App.4th at pp. 1400-1401.)

The appellate court seized the opportunity to develop a unifying test to apply in cases seeking damages for negligent infliction of emotional distress where there is no physical injury. (*Bro* v. *Glaser*, *supra*, 22 Cal.App.4th at p. 1401.) In an attempt to discover this "bright line," the court first reviewed the evolving definition of a "direct victim," including the holding in *Burgess*, and acknowledged a preexisting relationship between plaintiff and defendant must be the first prong of its proposed test. (*Id.* at pp. 1407-1416.) The court found both parents were direct victims because they had a preexisting relationship with the obstetrician.[1] (22 Cal.App.4th at p. 1401.)

However, the court reasoned something more than foreseeability and direct victim status is necessary to justify recovery for purely psychic injuries. The court analyzed all the published cases dealing with negligent infliction of emotional distress decided after *Molien* in search of a second prong. (*Bro* v. *Glaser*, *supra*, 22 Cal.App.4th at pp. 1417-1437.)[2] The court concluded the "something more" was an *"inquiry whose purpose is to*

---

[1]*Burgess* probably would have considered the father in *Bro* a bystander since the physician's relationship was only with the mother and the child. (See *Burgess* v. *Superior Court*, *supra*, 2 Cal.4th at pp. 1070-1071, fn. 4, and 1078, fn. 8.) However, if the physician assumed a duty to the father, as in *Molien*, the father may have qualified as a direct victim.

[2]*Bro*'s rejection of foreseeability and consequent abandonment of the principles explained in *Burgess* and the later Supreme Court cases is the result, in part, of an inaccurate reading of *Burgess*'s quote from *Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 663 [257 Cal.Rptr. 865, 771 P.2d 814], that "foreseeability of the injury *alone*" is not a useful restriction on the scope of liability. (*Bro* v. *Glaser*, *supra*, 22 Cal.App.4th at pp. 1401, 1437, italics added.) As the *Burgess* analysis makes clear, foreseeability is but one of several policy elements to consider. (See also *Newton* v. *Kaiser Foundation Hospitals* (1986) 184 Cal.App.3d 386, 391 [228

*measure the outrageousness of [defendant's] conduct in order to determine whether it has risen to that level where, as a policy matter, liability shall attach."* (*Id.* at pp. 1440-1441, original italics.) This inquiry became the second prong of *Bro*'s proposed test. (*Ibid.*)

*Bro*'s two-part test appropriately resolved the duty question in that case. However, the same result could have been obtained by applying the *Burgess* criteria unamplified. Damages for emotional distress are permitted only where the injury is serious and there is some means for assuring the genuineness of the claim. (*Molien v. Kaiser Foundation Hospitals, supra,* 27 Cal.3d at pp. 926-927.)

■     Where the plaintiff suffers no physical injury, the strongest assurance of the validity of the claim is the link between the tortious conduct and the emotional injury. The pivotal issue of policy is whether the emotional injury flows naturally from acts invading an established duty in tort. When the complaint alleges intentional conduct, the acts complained of are often characterized as outrageous because they are intended to invade the emotional security the tort overtly protects. In traditional negligence cases, however, a defendant's conduct need not be outrageous to fall within the sphere the tort is intended to protect. *Burgess* indicates policy factors are at work in determining whether the distress alleged naturally ensues from the invasion of an interest protected by the underlying duty—in this case the preexisting physician-patient relationship. ■     The physician's duty is to possess "the degree of learning and skill ordinarily possessed by physicians of good standing practicing in the same locality and [to] use ordinary care and diligence in applying that learning and skill to the treatment of his patient." (*Trindle v. Wheeler* (1943) 23 Cal.2d 330, 333 [143 P.2d 932]; see also *Turpin v. Sortini* (1982) 31 Cal.3d 220, 229 [182 Cal.Rptr. 337, 643 P.2d 954].) By his contract, the physician impliedly warrants his competency by undertaking to act as a physician. (See generally, Swan, *The California Law of Malpractice of Physicians, Surgeons, and Dentists* (1945) 33 Cal.L.Rev. 248; Note, *Establishing the Contractual Liability of Physicians* (1974) 7 U.C. Davis L.Rev. 84.)

Similar policy considerations are used to distinguish those emotional distress cases warranting recovery from those which must be endured as among the normal vicissitudes of modern life. *Molien* limits recoverable claims for serious emotional distress to those " 'where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.' " (27 Cal.3d at p. 928.)

Cal.Rptr. 890]; *Andalon v. Superior Court* (1984) 162 Cal.App.3d 600, 610 [208 Cal.Rptr. 899].)

In *Bro*, the foreseeability of serious emotional harm to the parents and the degree of certainty that the parents suffered injury as a result of a minor, nonnegligent mishap during delivery falls far short of the *Burgess* threshold. In our view, a reasonable person, normally constituted, ought to be able to easily cope with the mental stress of seeing a baby whose cheek was scratched during delivery with a bandage on her face.

The *Bro* test strays from the guidelines established by the Supreme Court and places too great a reliance on one particular element of the general negligence principles which govern imposition of liability. Moreover, *Bro* injects language from the separate tort of intentional infliction of emotional distress into the negligence framework, effectively creating a hybrid cause of action. Such a creation is unwarranted, given the Supreme Court's clear pronouncement that severe emotional distress resulting from negligent conduct does not constitute a separate tort. The results in both pre- and post-*Burgess* cases can be explained by applying the concept of foreseeability along with the other policy considerations relevant to the particular facts.[3]

Consequently, we decline to extend the reasoning in *Bro* beyond its facts. While *defining* the line between liability and nonliability may be difficult (*Andalon* v. *Superior Court, supra,* 162 Cal.App.3d at p. 607), it is apparent that, over the years, courts have had little problem in *recognizing* it in a particular factual setting when they see it.

■ Because we believe *Bro*'s reasoning adds an unnecessary gloss to *Burgess* and its two-part test should not apply to the case before us, we conclude the trial court erred in granting defendant's motion for judgment based on the jury's finding that defendant's conduct was not outrageous. The *Burgess* court's analysis of a mother's recovery for emotional distress damages stemming from negligence in delivery of her child is fully applicable to the facts in this case. Here, as in *Burgess*, the mother is a direct victim.

---

[3]Thus, for example in *Merenda* v. *Superior Court, supra,* 3 Cal.App.4th 1; *Smith* v. *Superior Court* (1992) 10 Cal.App.4th 1033 [13 Cal.Rptr.2d 133]; *Pleasant* v. *Celli* (1993) 18 Cal.App.4th 841 [22 Cal.Rptr.2d 663]; *Branch* v. *Homefed Bank* (1992) 6 Cal.App.4th 793 [8 Cal.Rptr.2d 182]; and *Selden* v. *Dinner* (1993) 17 Cal.App.4th 166 [21 Cal.Rptr.2d 153], plaintiffs were not permitted to recover because the breach of duty threatened only economic interests, i.e., legal malpractice or breach of contract. In *Allen* v. *Toten* (1985) 172 Cal.App.3d 1079 [218 Cal.Rptr. 725], recovery was denied for policy reasons where a wife, called to the scene of a standoff to assist police, ultimately saw her husband wounded. In the remaining cases in which the direct victim theory of recovery was permitted, various combinations of policy reasons, including foreseeability, were relied upon by the courts, although *Burgess* and *Huggins* probably would preclude recovery for the parents of the two-year-old in *Accounts Adjustment Bureau* v. *Cooperman* (1984) 158 Cal.App.3d 844 [204 Cal.Rptr. 881], and the father of the infant in *Newton* v. *Kaiser Foundation Hospitals, supra,* 184 Cal.App.3d 386.

The various policy considerations, including foreseeability of injury, apply with equal force and plaintiff is entitled to entry of judgment in the amount of $40,000 as found by the jury.

## DISPOSITION

Judgment is reversed. The trial court is directed to enter judgment in plaintiff's favor in the amount of $40,000. Plaintiff shall recover costs on appeal.

Sparks, Acting P. J., and Davis, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 15, 1996. Brown, J., did not participate therein.