[No. B114349. Second Dist., Div. Two. Feb. 26, 1998.]

MARIA SIMMONS WOODEN, Plaintiff and Appellant, v.
GEORGE HENRY RAVELING, Defendant and Respondent.

**COUNSEL**

Karlin and Karlin and Philip J. Karlin for Plaintiff and Appellant.

Fonda & Hilberman and David M. Samuèls for Defendant and Respondent.

**OPINION**

**ZEBROWSKI, J.—** ▇ Plaintiff alleged as follows: Her real property (apparently her home) abuts a public street. Plaintiff was on her property (apparently in her front yard) when defendant drove his car in a negligent manner on the adjoining street. Defendant's car collided with a second car. The collision caused defendant's car to be propelled, at high speed, onto plaintiff's property "so that it appeared that [defendant's car] would strike plaintiff." Although plaintiff did not allege that defendant's car actually struck her (apparently it stopped short or missed), she did allege that she "was placed in fear of being severely injured or killed by [defendant's car]." Plaintiff further alleged that she "was injured in her health, strength, and activity, sustaining bodily injuries and shock and injury to her nervous

system which has caused, and shall in the future cause her great mental and physical pain and suffering . . . ." Plaintiff did not allege any specific physical injury.

Defendant demurred. The court sustained the demurrer without leave to amend.[1] Both the demurrer and the ruling were based on *Bro* v. *Glaser* (1994) 22 Cal.App.4th 1398 [27 Cal.Rptr.2d 894]. *Bro* proclaimed a new two-pronged test which *Bro* stated should be applied in all nonimpact, noninjury, nonbystander negligent infliction of emotional distress (NIED) cases. The result in *Bro* seems correct in view of the particular facts of that case, but the two-pronged test announced in *Bro* is hopelessly inconsistent with the great weight of other authority, including several Supreme Court cases. The trial court was cited only to *Bro*, and not to the Supreme Court cases with which *Bro* is inconsistent. The trial court consequently followed *Bro* to sustain a demurrer which should have been overruled. We will reverse and remand with instructions to overrule defendant's demurrer and to order defendant to answer.

1. *The background for Bro: "bystander" and "direct victim" cases.*

Significant litigation has taken place regarding NIED, and at least two variants of the theory have been identified: "bystander" cases and "direct victim" cases.[2]

"Bystander" cases are cases in which the plaintiff was not physically impacted or injured, but instead witnessed someone else being injured due to defendant's negligence. (See, e.g., 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 841 et seq., p. 197 et seq. [discussing *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316] and its progeny].) "Because in [bystander cases] the class of potential plaintiffs could be limitless, resulting in the imposition of liability out of all proportion to the culpability of the defendant, this court [the Supreme Court] has circumscribed the class of bystanders to whom a defendant owes a duty to avoid negligently inflicting emotional distress. These limits are . . . as follows: 'In the absence of physical injury or impact to the plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff: (1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is

---

[1]There were some additional procedural convolutions which are not necessary to detail here.

[2]Some cases use a third category, "exposure" cases, in which plaintiff complains of exposure to toxic chemicals. (*Klein* v. *Children's Hospital Medical Center* (1996) 46 Cal.App.4th 889, 894 [54 Cal.Rptr.2d 34]). Most cases include these "exposure" cases in the "direct victim" category.

causing injury to the victim and (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness.' [Citation.]" (*Burgess* v. *Superior Court* (1992) 2 Cal.4th 1064, 1073 [9 Cal.Rptr.2d 615, 831 P.2d 1197].)

"Direct victim" cases are cases in which the plaintiff's claim of emotional distress is not based upon witnessing an injury to someone else, but rather is based upon the violation of a duty owed directly to the plaintiff. "[T]he label 'direct victim' arose to distinguish cases in which damages for serious emotional distress are sought as a result of a breach of duty owed the plaintiff that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two.' [Citation.] In these cases, the limits [on bystander cases, as quoted above] have no direct application. [Citations.] Rather, well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case." (*Burgess* v. *Superior Court*, *supra*, 2 Cal.4th 1064, 1073.)

In the instant case, plaintiff does not complain of witnessing an injury to another, but instead complains of being placed in fear of injury or death to herself personally. Plaintiff hence claims to be a direct victim of defendant's negligence.

## 2. *The Bro case.*

In *Bro*, the case upon which the trial court relied to sustain defendant's demurrer, a doctor nicked a baby's cheek with a scalpel during a cesarean delivery. Although it was established that the mishap was not malpractice, the parents claimed direct victim NIED arising from the manner in which the bandaged baby had later been "presented" to them.[3] *Bro* seized upon this scenario to publish a lengthy discourse on "direct victim" NIED claims which are not accompanied by physical harm.

*Bro* observed that "to recover damages for purely emotional distress in nonbystander cases, it is first necessary to be a direct victim. Thus, it is important if not imperative to seek the origins of the definition and to trace its evolution." (*Bro* v. *Glaser*, *supra*, 22 Cal.App.4th at p. 1407.) *Bro* criticized the case which pioneered the direct victim concept, *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616

---

[3]The parents apparently had not observed the mishap, and hence could not sue for bystander NIED because of the ruling in *Thing* v. *La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814]. Moreover, since there had been no malpractice, it is doubtful that a bystander NIED claim could have been successful in any event.

P.2d 813, 16 A.L.R.4th 518], for not providing a more complete definition of the term "direct victim." *Bro* was also highly critical of *Molien* for its "willingness to award money to a plaintiff, in a negligence case, where there had been no monetary loss suffered either by reason of physical injury or otherwise." *Bro* complained that "*Molien* launched the courts onto a wholly uncharted sea without bearings or distances for fixing 'a money award against one who unintentionally disturbs the mental tranquillity of another,'" and contended that *Molien* had "loosed the floodgates of liability for emotional distress without accompanying physical injury." (*Bro* v. *Glaser, supra*, 22 Cal.App.4th at p. 1410.) *Bro* opined that "common sense and practical necessity would not tolerate unlimited access to the legal system to anyone seeking to recover money from another who had unintentionally disturbed only the former's mental tranquility." (*Ibid.*) *Bro* thus embarked on a search for limitations on the direct victim NIED tort. *Bro* purported to find the first limitation it was seeking in *Burgess* v. *Superior Court, supra*, 2 Cal.4th 1064, 1074.

In *Burgess*, the Supreme Court initially states that the duty supporting a "direct victim" NIED case can have three alternative origins: (1) it can be a duty assumed by defendant, or (2) it can be a duty imposed on defendant by law, or (3) it can be a duty arising out of a preexisting relationship between defendant and plaintiff. (2 Cal.4th at 1073; see also *Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 590 [257 Cal.Rptr. 98, 770 P.2d 278] [stating same three potential origins for defendant's duty in direct victim NIED cases].) Later, however, *Burgess* discusses only a preexisting relationship as the origin for defendant's duty, stating that these "principles . . . are sound: (1) damages for negligently inflicted emotional distress may be recovered in the absence of physical injury or impact, and (2) a cause of action to recover damages for negligently inflicted emotional distress will lie, notwithstanding the criteria imposed upon recovery by bystanders, in cases where a duty arising from a preexisting relationship is negligently breached. [Citations.] In fact, it is this later principle which defines the phrase 'direct victim.' That label signifies nothing more." (*Burgess* v. *Superior Court, supra*, 2 Cal.4th at p. 1074.)

*Burgess* involved a claim by a mother against her obstetrician for emotional distress resulting from injuries to the woman's child during delivery. The Supreme Court found that the obstretician owed a duty to the woman because of their preexisting doctor-patient relationship. It was the breach of this duty that supported the NIED claim in *Burgess*. Given the context of *Burgess*, the reason for the Supreme Court's focus on preexisting relationship as the source of the defendant doctor's duty is apparent. Those were the facts of *Burgess*. Nowhere does *Burgess* expressly state that a preexisting

relationship is the *only possible* origin for the necessary duty. To the contrary, *Burgess* identified three possible sources for the necessary duty, including a duty imposed by law. Even in its focus on a preexisting relationship as giving rise to a duty supporting an NIED claim, *Burgess* cites *Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc., supra*, 48 Cal.3d 583, 590, which expressly lists three possible origins (duty imposed by law, duty assumed by defendant, duty arising from preexisting relationship).

*Burgess*, however, does contain the language that the "later principle" (the principle that an NIED claim can be based on the breach of a duty arising out of a preexisting relationship) "defines the phrase 'direct victim,' " and that the label "direct victim" "signifies nothing more." (*Burgess* v. *Superior Court, supra*, 2 Cal.4th at p. 1074.) This language, taken out of context and without regard for the facts in *Burgess*, could be construed to mean that a preexisting relationship is ·a necessary element of all direct victim NIED cases. *Bro*, in its quest for limitations on the NIED theory, construed it that way. *Bro* explained: "More important and providing the linchpin to our analysis, *Burgess* at last delivered the sorely needed pronouncement which defined a 'direct victim' as used in *Molien* but not therein defined. *Burgess* stated that the presence of a preexisting relationship between the parties is that 'which defines the phrase "direct victim." That label signifies nothing more.' (*Burgess, supra*, 2 Cal.4th 1064, 1074.)" (*Bro* v. *Glaser, supra*, 22 Cal.App.4th at p. 1415.) *Bro* thus concluded that a preexisting relationship was a sine qua non of a direct victim NIED claim. On the reasoning of *Bro*, the mere breach of a duty imposed by law—for example, a duty to drive carefully—cannot ever support a direct victim NIED claim.

After identifying preexisting relationship as a limitation on the direct victim NIED tort, *Bro* then added a further gloss to this newfound require-ment, stating: ". . . with reference to the language 'preexisting relationship,' the facts in *Burgess* reflect that such relationship had been *consensual*. As a result, we could only conclude, when the *Burgess* court referred to a 'preexisting relationship' as necessary for there to have been a direct victim of a defendant's negligence in purely emotional distress cases, that the court implied that such relationship had to be *consensual*. This refinement of the definition is justified because it reflects the actual nature of the relationships which existed in *Burgess* as well as in *Marlene F.* and in a substantial number of post-*Molien* authorities dealing with whether there should be an award of damages to direct victims for purely emotional distress." (*Bro* v. *Glaser, supra,* 22 Cal.App.4th at pp. 1415-1416.) *Bro* thus concluded that there can be no direct victim NIED claim in a nonimpact, nonphysical injury case, unless the plaintiff and defendant had a preexisting consensual rela-tionship.

*Bro* went on to find that the plaintiff parents and the defendant obstretician did have a consensual preexisting relationship in *Bro*, and that this element of *Bro*'s test was therefore satisfied. *Bro* thus continued its search for universally applicable limitations on the NIED theory. According to *Bro*, "for so long as the courts are going to have to deal with that vestige of *Molien* which the Supreme Court in *Burgess* confirmed as yet viable, namely that purely emotional distress inflicted upon so-called direct victims is actionable, then the need for an approach to the decisional task, *workable in every such case*, becomes imperative." (*Bro* v. *Glaser, supra,* 22 Cal.App.4th at p. 1440, original italics.) After identifying its "preexisting consensual relationship" test as the first prong of a universal test for direct victim NIED, *Bro* opined that ". . . the second prong of the test requires an inquiry into the nature of the defendant's conduct, an *inquiry whose purpose is to measure the outrageousness of such conduct in order to determine whether it has arisen to that level where, as a policy matter, liability shall attach.*" (*Id.* at pp. 1440-1441, original italics). After adapting this "outrageous conduct" concept from the related tort of intentional infliction of emotional distress (IIED), *Bro* then "synthesized" its "Black Letter" proposition that "a person in an existing, consensual relationship with another has a legally protected interest in being free of emotional distress unintentionally caused by the outrageous conduct of that other." (*Id.* at p. 1441.) *Bro* then summarily concluded that plaintiffs' complaint (about the manner in which the bandaged child was "presented" to them) "borders on the frivolous," noting that "their brief does not even undertake to explain how or why such *presentation* provided a credible occasion for experiencing emotional distress." (*Id.* at p. 1442.) *Bro* thus found the second prong of its test not satisfied, and affirmed a summary judgment against plaintiffs on that basis.[4]

---

[4]The outcome in *Bro* is easily explainable by standard negligence principles. It had been established in *Bro* that the doctor had committed no malpractice, hence the doctor's duty of medical care had not been breached. Plaintiffs' claim instead was that the "presentation" had not been done in the proper manner. It had not been established in *Bro* that there is a duty to "present" a newborn in any particular manner. (If the baby had been "presented" in some outrageous manner, the tort of IIED might be present, but there was no such evidence in *Bro*.) The ruling in *Bro* is therefore easily explainable on the straightforward basis of a lack of duty to make a "presentation" in any particular manner or, alternatively, on the basis of lack of evidence that any such duty as may exist was breached. (See, e.g., *Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 875, 882 [2 Cal.Rptr.2d 79, 820 P.2d 181] ["As in all recovery for negligence, the potential plaintiff must be a person to whom the defendant owes a duty recognized by the law" and ". . . when damages are sought for negligently inflicted emotional distress, the tort is negligence regardless of the specific name that may be used to describe the tort, and . . . the elements of duty, breach of duty, causation and damages must be pleaded and proven."].) As *Bro* stated, the plaintiff parents had not explained what circumstances of the "presentation" might have "provided a credible occasion for experiencing emotional distress." By this comment it is unclear whether *Bro* was referring to duty and breach or to damages or causation, but the statement seems to suggest the lack of duty and

In summary, *Bro* purported to create a new two-prong test for liability in all nonimpact, nonphysical injury, nonbystander NIED cases: preexisting relationship plus outrageous conduct. Plaintiff in the instant case could not satisfy either prong of this test, and the trial judge accordingly sustained defendant's demurrer without leave to amend. *Bro*, however, simply cannot withstand comparison with the controlling Supreme Court precedents. None of these precedents suggests an outrageous conduct component for an NIED claim; instead they treat an NIED claim as simply a species of negligence in which damages caused by a breach of duty are compensable. Nor do any of these Supreme Court precedents limit direct victim NIED recovery to instances of preexisting relationship; instead they list three possible origins for the necessary duty. Both the *Burgess* and *Marlene F.* cases discussed above listed duty imposed by law and duty assumed by defendant as other possible bases for a direct victim NIED claim. (See also *Klein* v. *Children's Hospital Medical Center*, *supra*, 46 Cal.App.4th 889, 895.) Moreover, *Bro* is inconsistent with *Potter* v. *Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965 [25 Cal.Rptr.2d 550, 863 P.2d 795], a Supreme Court case decided only two months before *Bro*.

### 3. *The Potter case.*

The *Bro* opinion was filed on February 24, 1994. On December 27, 1993, the Supreme Court decided *Potter* v. *Firestone Tire & Rubber Co.*, *supra*, 6 Cal.4th 965. Plaintiffs in *Potter* were residents who lived adjacent to a landfill. Defendant Firestone had illegally deposited carcinogens into the landfill, and the carcinogens had contaminated the residents' water supply. The issue in *Potter* was whether the residents could recover, in the absence of physical injury, emotional distress damages for fear of cancer resulting from exposure to the carcinogens. (*Id.* at 973.) The Supreme Court preliminarily explained that the tort of NIED is simply the tort of negligence, "a cause of action in which a duty to the plaintiff is an essential element. [Citations.] *That duty may be imposed by law, be assumed by the defendant, or exist by virtue of a special relationship.* [Citation.] [¶] The lesson of these decisions is: unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." (*Id.* at pp. 984-985, italics added.) Notably for purposes of the instant case, *Potter* remained consistent with *Marlene F.* and *Burgess* in stating three

---

breach inasmuch as parents viewing their injured child will expectably be distressed to some extent. *Bro*'s extended attempt to formulate a universal rule for direct victim NIED cases was therefore not necessary to rule on the trial court's decision in *Bro*. Simple and well-established negligence principles would have sufficed.

alternative potential origins for the duty supporting a direct victim NIED claim: duty imposed by law, duty assumed by defendant, or "special relationship" (presumably the same as "preexisting relationship").

The Supreme Court went on to state that the requirement of one of these three types of duty as a limitation on recovery for emotional distress did not aid defendant Firestone, because Firestone had violated *"a duty imposed on it by law* and regulation to dispose of toxic waste only in a class I landfill and to avoid contamination of underground water. The violation led directly to plaintiffs' ingestion of various known and suspected carcinogens, and thus to their fear of suffering the very harm which the Legislature sought by statute to avoid. Their fear of cancer was proximately caused by Firestone's unlawful conduct which threatened serious physical injury." (*Potter* v. *Firestone Tire & Rubber Co., supra,* 6 Cal.4th at p. 985, italics added, fn. omitted.) Thus *Potter,* decided by the Supreme Court only two months before *Bro,* did not limit nonimpact, nonphysical injury direct victim NIED cases to those situations in which defendant had violated a duty arising out of a preexisting consensual relationship, as *Bro* later ruled was required. No preexisting consensual relationship existed between the residents and Firestone, and the Supreme Court nevertheless found that recovery could be predicated on Firestone's breach of a duty imposed by law.

The Supreme Court in *Potter* then turned to the arguments of amici curiae who had filed briefs supporting Firestone's position: "Amici curiae first assert that, under California case law, the existence of a physical injury is a predicate to recovering damages for emotional distress in a negligence action unless the action involves 'bystander' recovery [citation], or there is a 'preexisting relationship' between the plaintiff and defendant [citation] which creates a duty to the plaintiff, neither of which is implicated here. *This assertion is plainly without merit.* [¶] Significantly, we recently reaffirmed the principle that, in California, 'damages for negligently inflicted emotional distress may be recovered in the absence of physical injury or impact . . . .' (*Burgess, supra,* 2 Cal.4th at p. 1074.) We held that 'physical injury is not a prerequisite for recovering damages for *serious* emotional distress' . . . . [¶] *Contrary to amici curiae's assertions, this principle has never been restricted to cases involving bystanders or preexisting relationships.* Notably, amici curiae cite no authority even suggesting such a limitation." (*Potter* v. *Firestone Tire & Rubber Co., supra,* 6 Cal.4th at p. 986, italics added.)[5]

The amici curiae in *Potter* next contended that physical injury should be declared a prerequisite for recovery of emotional distress damages, at least in

---

[5]Amici curiae could not, of course, cite *Bro* for this proposition, because *Bro* was decided two months after the decision in *Potter.*

cases in which no preexisting relationship exists. (*Potter* v. *Firestone Tire & Rubber Co., supra*, 6 Cal.4th at pp. 986-987.) The Supreme Court also rejected this argument, citing "the reasons for our decision to discard the requirement of physical injury. As we observed more than a decade ago, '[t]he primary justification for the requirement of physical injury appears to be that it serves as a screening device to minimize a presumed risk of feigned injuries and false claims. [Citations.]' . . . Such harm was 'believed to be susceptible of objective ascertainment and hence to corroborate the authenticity of the claim.' . . . [¶] In *Molien* . . . we perceived two significant difficulties with the physical injury requirement. First, 'the classification is both overinclusive and underinclusive when viewed in the light of its purported purpose of screening false claims.' (27 Cal.3d at p. 928.) It is overinclusive in that it permits recovery whenever the suffering accompanies or results in physical injury, no matter how trivial (*ibid.*), yet underinclusive in that it mechanically denies court access to potentially valid claims that could be proved if the plaintiffs were permitted to go to trial (*id.*, at p. 929). [¶] Second, we observed that the physical injury requirement 'encourages extravagant pleading and distorted testimony.' (*Molien, supra*, 27 Cal.3d at p. 929.) We concluded that the retention of the requirement ought to be reconsidered because of the tendency of victims to exaggerate sick headaches, nausea, insomnia and other symptoms in order to make out a technical basis of bodily injury upon which to predicate a parasitic recovery for the more grievous disturbance, consisting of the mental and emotional distress endured. (*Ibid.*) [¶] Therefore, rather than adhere to what we perceived as an artificial and often arbitrary means of guarding against fraudulent claims, we acknowledged that '[t]he essential question is one of proof[.]' (*Molien, supra*, 27 Cal.3d at pp. 929-930.) Thus, ' "[i]n cases other than where proof of mental distress is of a medically significant nature, [citations] the general standard of proof required to support a claim of mental distress is some guarantee of genuineness in the circumstances of the case. [Citation.]" ' . . . [¶] Our reasons for discarding the physical injury requirement in *Molien, supra*, 27 Cal.3d 916, remain valid today and are equally applicable in a toxic exposure case. That is, the physical injury requirement is a hopelessly imprecise screening device—it would allow recovery for fear of cancer whenever such distress accompanies or results in any physical injury, no matter how trivial, yet would disallow recovery in all cases where the fear is both serious and genuine but no physical injury has yet manifested itself." (*Potter* v. *Firestone Tire & Rubber Co., supra*, 6 Cal.4th at pp. 987-988.)

After disposing of the preexisting relationship theory, *Potter* went on to develop specific requirements for recovery in a fear of cancer case. The specific requirements imposed are not germane to the instant case except in one respect: Justice George disagreed with some of them. He therefore filed

a concurring and dissenting opinion that had the prescience to effectively decide the instant case before it happened.

Justice George began his opinion by explaining the foundational law which provided his point of departure for analysis of the fear of cancer issue. Of interest for present purposes is not Justice George's view on the fear of cancer issue, but rather his exposition of the foundational law. In that exposition, Justice George foreshadowed with remarkable clarity the proper ruling in the instant case. He wrote as follows: "Well over half a century ago, this court recognized a plaintiff's right to recover damages for fright, shock, and nervous distress when the negligent conduct of a defendant places the plaintiff *personally* at risk, causing the plaintiff reasonably to fear for his or her own safety, *even in the absence of any injurious impact.* [Citations]. [¶] Thus, for example, if an automobile driver negligently speeds by a pedestrian in a crosswalk, narrowly missing the pedestrian but causing him or her reasonably to suffer serious emotional distress as a result of the encounter, the pedestrian is entitled to recover damages for reasonable emotional distress, even though the driver's conduct, while posing a risk of personal harm to the pedestrian, did not in fact inflict any direct physical injury. As this example illustrates, under traditional negligence principles a plaintiff's right to recover damages for emotional distress sustained as a result of fear or concern for his or her own health and safety does not depend upon whether the plaintiff *actually* incurred a physical injury (or disease) as a result of the defendant's conduct. Rather, so long as the defendant has breached a duty of care owed to the plaintiff, thereby subjecting the plaintiff to an unreasonable risk of personal injury or illness, and the defendant's conduct is of such a nature that a reasonable person, in the plaintiff's position, would sustain serious emotional distress as a result of such conduct, the plaintiff who in fact sustains such emotional distress generally is entitled to recover damages for that distress." (*Potter* v. *Firestone Tire & Rubber Co., supra,* 6 Cal.4th at p. 1021 (conc. and dis. opn. of George, J.).) Justice George's example is hardly distinguishable from the instant case on any material point.

### 4. *Bro's treatment of Potter.*

*Bro* mentions *Potter,* but only in footnote 5. (*Bro* v. *Glaser, supra,* 22 Cal.App.4th at p. 1417.) In footnote 5, *Bro* simply states that in *Potter* "there was also no preexisting relationship but . . . the possibility of recovering adjunct emotional distress damages, under limited conditions, was recognized in a case where Firestone . . . did not claim it was not negligent in illegally dumping carcinogenic chemical waste which contaminated plaintiffs' underground water supply, thereby inducing a fear of

contracting cancer." (*Id.* at p. 1417, fn. 5.) *Bro* contains no further attempt to reconcile its holding with *Potter.* *Bro*'s footnote 5 was a comment appended to text reading as follows: "there is a group of direct-victim cases where recovery was allowed. In two of this latter group, there had been no preexisting relationship between the parties. In the first of these 'hybrid' cases, the plaintiff was identified as a direct victim because of having also been the victim of other tortious conduct. In the second, the court implied that plaintiff was a direct victim by invoking *Molien* where the plaintiff had also been the victim of other tortious conduct." (*Bro* v. *Glaser*, *supra*, at pp. 1416-1417.) Notwithstanding that *Bro* thus acknowledged, albeit in an after-thought sort of way, that NIED claims can be viable even in the absence of a preexisting relationship, *Bro* went on to promulgate its "Black Letter" limitation that a preexisting relationship was necessary. *Bro* may arguably have some validity in the nature of law professor-style theorizing, but it is simply not consistent with existing law.

### 5. *Bro's outrageous conduct requirement.*

The outrageous conduct element announced by *Bro* is also inconsistent with existing law. Although this proposition had not already been specifically rejected by the Supreme Court at the time of the *Bro* decision (as had the preexisting relationship idea), that may be because it appears to have been *Bro* that originated the proposition that outrageous conduct is an element of NIED. In any event, the proposition is not consistent with voluminous precedent establishing that NIED is simply a species of negligence. (See, e.g., *Potter* v. *Firestone Tire & Rubber Co.*, *supra*, 6 Cal.4th 965, 984; *Huggins* v. *Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124, 129 [24 Cal.Rptr.2d 587, 862 P.2d 148]; *Christensen* v. *Superior Court*, *supra*, 54 Cal.3d 868, 875, 882; *Marlene F.* v. *Affiliated Psychiatric Medicial Clinic, Inc.*, *supra*, 48 Cal.3d 583, 588; *Camenisch* v. *Superior Court* (1996) 44 Cal.App.4th 1689, 1693 [52 Cal.Rptr.2d 450]; *Macy's California, Inc.* v. *Superior Court* (1995) 41 Cal.App.4th 744, 748 [48 Cal.Rptr.2d 496].) Negligence damages have never been confined to those caused by "outrageous" negligent conduct, leaving losses caused by conduct that is merely negligent to be borne by the victim. Instead, negligence damages generally compensate the victim for all injuries caused by defendant's breach of duty. (See, e.g., Civ. Code § 1714 [everyone is responsible for injury caused by their want of ordinary care].)

Another indication of the insupportability of *Bro*'s creation of an outrageous conduct element is its irreconcilability with the example of established law given by Justice George in his concurring and dissenting opinion in *Potter.* Justice George's opinion that the emotionally distressed pedestrian

could recover made no mention of whether or not the driver's conduct could be considered outrageous. Instead, he simply described the driver's conduct as negligent. Over the past 25 years many cases have considered the subject of NIED, and none have been cited or independently found that recognized the outrageous conduct element espoused by *Bro*. *Bro* itself cited no such cases.

Finally, the proposition that outrageous conduct is a necessary element of NIED was rejected in *Mercado* v. *Leong* (1996) 43 Cal.App.4th 317 [50 Cal.Rptr.2d 569]. *Mercado* was another obstetrician case in which the baby was injured. The mother obtained a jury award for NIED, but the trial court granted judgment notwithstanding the verdict in reliance on *Bro*. The *Mercado* court reversed and reinstated the jury's award, rejecting *Bro's* injection of the outrageous conduct element into NIED as inconsistent with *Burgess*. We agree with *Mercado*. There is no authority for the proposition that an injured plaintiff is barred from recovery for injuries caused by conduct which is negligent, but not outrageous.

6. *Disposition.*

The judgment (order of dismissal) is reversed. The matter is remanded with instructions to overrule the demurrer and order defendant to answer. Plaintiff to recover costs on appeal.

Fukuto, Acting P. J., and Nott, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 13, 1998.