Opinion by Judge NOONAN; Dissent by Judge HALL.
NOONAN, Circuit Judge:
Dense fog off of Point Reyes, California, “the foggiest point on the Pacific coast.” K. Goodwin, Point Reyes Visions (2008). A covey of fishing vessels trolling for salmon in the fog. Afternoon, July 13, 2007, M/V Eva Danielsen departs San Francisco loaded with cargo destined for Portland. The Eva Danielsen is 291 feet in length and has a dead weight of 4,286 tons. Among the covey of fishing vessels is the Marja, owned and operated by Brian Stacy. At 5 P.M., the radar of the Marja picks up the Eva Danielsen, one mile away, headed to the Marja on a collision course. The Marja signals the danger to the freighter. The Eva Danielsen avoids hitting the Marja but comes close enough for Stacy to hear her engine and machinery and to feel the vessel’s wake. She passes at close quarters.
Having passed the Marja, the Eva Danielsen collides with the F/V Buona Madre. The collision destroys the fishing vessel and results in the death of her captain, Paul Alan Wade. This lawsuit followed from these events.
PROCEEDINGS
Brian Stacy brought this suit against the owners and operators of the Eva Danielsen for the negligent infliction of emotional distress. Stacy alleged that the freighter was proceeding at an unsafe speed without a proper lookout, proper radar equipment, or proper signals in violation of the International Navigation Rules Act. Stacy alleged that this action put him in grave and *1035 imminent risk of death or great bodily harm, impacting him emotionally so that he could not work and needed psychiatric help.
On motion of the defendants, the district court dismissed Stacy’s first amended complaint for failure to state a cause of action. The court stated:
The Court concludes that, because very few jurisdictions employ a zone of danger test that lacks a “witnessed harm” requirement, even if a maritime [negligent infliction of emotional distress (NIED) ] claim may be brought under a zone of danger theory, the claim must be premised on the plaintiffs having experienced a “psychic injury” by “witnessing another being seriously injured or killed,” Chan [v. Soc’y Expeditions, Inc., 39 F.3d 1398, 1408 (9th cir.1994) ] (emphasis omitted), while simultaneously being threatened with physical injury to him or herself. The Court will thus evaluate Plaintiffs allegation of NIED under Chan’s, formulation of the zone of danger test.
Stacy appeals.
ANALYSIS
Jurisdiction is based on federal maritime jurisdiction of torts committed on the high seas. 28 U.S.C. § 1333(1). We disregard as erroneous and irrelevant Stacy’s alternative jurisdictional theory of diversity of citizenship.
We review de novo the dismissal. Barker v. Riverside County Office of Educ., 584 F.3d 821, 824 (9th Cir.2009). We accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff. Id. The sufficiency of the complaint is governed by the general maritime law of the United States. Chan v. Soc’y Expeditions, Inc., 39 F.3d 1398, 1409 (9th Cir.1994). The federal standard for the negligent infliction of emotional distress is provided by Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 547-48, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).
Under this test, applicable in the maritime jurisdiction of the United States, a tort is committed by a defendant subjecting a plaintiff to emotional harm within “the zone of danger” created by the conduct of the defendant. Id. In Gottshall, the Supreme Court held that “the zone of danger” test allowed recovery for “those plaintiffs who sustain a physical impact as a result of a defendant’s negligent conduct, or who are placed in immediate risk of physical harm by that conduct.” Id. The Supreme Court went on to quote a law review article’s exposition: “That is, ‘those within the zone of danger of physical impact can recover for fright, and those outside of it cannot.’ ” Id. at 548, 114 S.Ct. 2396 (quoting Richard N. Pearson, Liability to Bystanders for Negligently Inflicted Emotional Harm, 34 U. Fla. L.Rev. 447, 489 (1982)).
Stacy alleged that he was within the zone of danger and that he suffered emotional distress from the fright caused by the negligent action of the defendants. Nothing more was required to assert a cause of action cognizable under maritime law.[2]
*1036 The Supreme Court has not abandoned its statement of the tort inflicted by creating a zone of danger. Metro-N. Commuter R.R. Co. v. Buckley, 521 U.S. 424, 430, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997) (“immediate risk of physical harm” created by the defendant’s conduct); Norfolk & W. Ry. Co. v. Ayers, 538 U.S. 135, 146, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003) (“those who escaped instant physical harm, but were ‘within the zone of danger of physical impact’ ”). As would be expected, the Ninth Circuit has followed this standard. Rivera v. Nat’l R.R. Passenger Corp., 331 F.3d 1074, 1082 (9th Cir.2003).
The dissent cites cases in which various state courts defined the zone of danger by reference to the plaintiff being the witness of an accident to someone else. Gottshall cited those cases. It did not endorse them. Gottshall explicitly stated that the zone included a plaintiff “placed in immediate risk of physical harm.”
*1037 Chan tells us how we have maritime jurisdiction of a claim for the tortious infliction of emotional injury. It is otherwise not instructive here. Judge Goodwin, writing for the panel in Chan, stated: “at issue here is the psychic injury that comes from witnessing another being seriously injured or killed.” 39 F.3d at 1408 (emphasis omitted). After setting out its understanding of the various tests for the tort at issue, the court declared: “it is clear that we need not decide which test to adopt today to decide this appeal. None of these theories allows recovery for emotional distress when the plaintiff was not present at the accident scene.” Id. at 1409.
Nothing in Chan addresses a claim of emotional damages by a person directly endangered by a vessel. Nothing in Chan purports to refíne or reject the teaching of the Supreme Court in Gottshall. Nothing in Chan is relevant to the adequacy of Stacy’s complaint.
For these reasons, the judgment of the district court is REVERSED and the case is REMANDED for further proceedings.

. The dissent is based on the proposition that the zone of danger lest requires a plaintiff to witness harm to another person, rejecting the mine-run cases where the plaintiff is the direct victim of negligent conduct. The zone of danger test, however, only came to accommodate bystanders after many years of doctrinal development. See, e.g., Jarrett v. Jones, 258 S.W.3d 442, 445 (Mo.2008). The dissent relies on our decision in Chan as though it adopted the witness test as exclusive. Judge Goodwin wrote for the panel in Chan: "at issue here is the psychic injury that comes from witnessing another being seriously injured or killed.” 39 F.3d at 1408. The panel did not address the case where a plaintiff *1036 suffers psychic damage from a direct encounter.
' Failure to distinguish between direct and derivative emotional harm undermines the dissent. The dissent relies on a passage from Gottshall rejecting the Third Circuit's "foreseeability” test. Nothing in this passage imposes a "witnessed harm” requirement for claims of direct emotional harm.
The dissent also relies on two annotations. The first bears the title, Recovery Under State Law for Negligent Infliction of Emotional Distress Due to Witnessing Injury to Another Where Bystander Plaintiff Must Suffer Physical Impact or Be in Zone of Danger, 89 A.L.R. 5th 255 (2010) (underline added). Given the title of this annotation, it is unsurprising that the cases therein only involve “witnessed harms.” A book titled New York Skyscrapers will likely not discuss the Sears Tower or Taipei 101. We would err, of course, to conclude that these structures do not exist. The second annotation simply does not support the dissent's position; it contains ample authorities applying the zone of danger test to direct victims, not only bystanders. See Recoveiy for Negligent or Intentional Infliction of Emotional Distress Under Jones Act (46 U.S.C.A. Appx. § 688) or Under Federal Employers’ Liability Act (45 U.S.C.A. §§ 51 etseq.), 123 A.L.R. Fed. 583 § II.A.3 (2010) (citing, inter alia, Hall v. Norfolk S. Ry. Co., 829 F.Supp. 1571, 1576 (N.D.Ga.1993) ("A majority of jurisdictions now use the ‘zone of danger' rule, which permits recovery for emotional injuries resulting from witnessing physical harm to another or from fearing physical harm to oneself.”)).
The dissent repeats its fallacy by relying on two cases that purportedly “formulate the ‘zone of danger test' as including a 'witnessed harm' requirement.” Dis. Op. 1043. By their own terms, those cases addressed "negligent infliction of emotional distress upon injury to a third person.” Asaro v. Cardinal Glennon Mem'l Hosp., 799 S.W.2d 595, 600 (Mo. 1990) (emphasis added); see Rickey v. Chi. Trarisit Auth., 98 Ill.2d 546, 75 Ill.Dec. 211, 457 N.E.2d 1, 5 (1983) (applying the zone of danger test to "a bystander who is in the zone of physical danger” (emphasis added)).
The dissent's "not-so hypothetical” scenario is vivid and thought-provoking. It underscores the dissent's faulty rationale. The dissent envisions a speeding motorist who nearly collides with "dozens, perhaps hundreds of other vehicles” over a two-hundred mile stretch of highway. Dis. Op. 1045. At the end of this distance, the motorist dramatically collides with a big rig. Id. at 1044-45. The "dozens, perhaps hundreds of other vehicles” could potentially prevail against the speeding motorist under a zone of danger theory, assuming they each suffered emotional distress from their own near-collisions. See, e.g., Wooden v. Raveling, 61 Cal.App.4th 1035, 71 Cal.Rptr.2d 891 (1998); see also Camper v. Minor, 915 S.W.2d 437, 442 (Tenn.1996) (noting that the zone of danger test “arose primarily from ‘near-miss' automobile accident cases”). The vehicles sufficiently near the final collision with the big rig may possibly recover as bystanders. Cf., e.g., Zea v. Kolb, 204 A.D.2d 1019, 613 N.Y.S.2d 88, 88 (1994); Stadler v. Cross, 295 N.W.2d 552, 554 (Minn. 1980). Yet under the dissent's approach, the most obvious candidate for recovery — the driver of the big rig — would have no claim against the speeding motorist. After all, the driver of the big rig did not witness any collision between the speeding motorist and a third party; the driver of the big rig was the direct victim of negligent conduct, and under the dissent's view, his claim is foreclosed by Chan.