Karen M. JACOBSEN, and Hardy F. Jacobsen, Plaintiffs–Appellants,

v.

MARIN GENERAL HOSPITAL; California Transplant Donor Network, Inc.; Henry Buhrmann; Phyllis Weber; and Marin County Coroner's Office, Defendants–Appellees.

No. 97–16139.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1998.

Decided Sept. 15, 1999.

Raphael S. Moore (argued), Law Office of Raphael S. Moore, Davis, California, for plaintiffs-appellants Karen M. and Hardy F. Jacobsen.

Warren L. Dranit (argued), Spaulding McCullough & Tansil, Santa Rosa, California, for defendant-appellee Marin General Hospital.

Robert H. Garnett, Lewis, D'Amato, Brisbois & Bisgaard, San Francisco, California, for defendant-appellee California Transplant Donor Network, Inc.

Before: SCHROEDER and THOMAS, Circuit Judges, and MOSKOWITZ,* District Judge.

MOSKOWITZ, District Judge:

Karen and Hardy Jacobsen appeal the district court's dismissal with prejudice of their claims against the Marin General Hospital ("Hospital") and the California Transplant Donor Network, Inc. ("Network"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## BACKGROUND [1]

The Jacobsens are citizens and residents of the Kingdom of Denmark. In 1995, their son, Martin Jacobsen ("Martin"), also a Danish citizen, was visiting the United States as a tourist when, on the morning of

---

* The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

1. The following facts are taken from the Jacobsens' complaint.

October 4, 1995, the California Highway Patrol found Martin lying on the side of northbound 101, off of Alexander Bridge and south of the Waldo Tunnel in Sausalito, California. He was unconscious and suffering from head trauma. Martin was taken to the Hospital and admitted at approximately 4:05 a.m. on October 4. At that time, Dr. Morris, Martin's attending physician, noted "presumed homeless" and further noted that no I.D. had been made. At 8:25 a.m., the Network contacted the Marin County Coroner's Office ("Coroner") and requested a donation of Martin's organs. The Coroner denied the request. At 9:00 a.m., a search began for Martin's next of kin or other persons authorized to make or decline an anatomical gift of Martin's organs.

Sometime before 9:30 a.m. on October 4, the Marin County Sheriff's Department ("Sheriff") and the Coroner took photos of Martin's body. The photos depict a blue card next to Martin's body, listing the date "10/4/95" and the name "Jacobsen, M." At 12:25 p.m., the Network made another request for a donation of Martin's organs. Dr. Morris, in response, indicated that Martin had not been declared brain dead. At 2:00 p.m., the Network called the Sheriff and was told that the patient had been identified by the FBI as Martin Jacobsen from New York City.

The following day, on October 5, 1995, at 9:00 a.m., the Network spoke with the Sheriff, who stated that he felt "9/10" sure that the patient was "Martin Jacobsen." At 9:40 a.m., Dr. Ramirez made a clinical determination that Martin was brain dead. At 3:00 p.m., Dr. Nisam made another determination that Martin was brain dead. Dr. Nisam also noted in his report "that the patient was being maintained physically, pending the identification of next of kin as well as the coroner's conclusions" and that the Sheriff, Coroner and FBI "made extensive search for over 40 hours, unsuccessfully, to find any family member or even identification of this young man. They, therefore, officially released the

body for acceptance of organ donation. . . ."

On October 6, 1995, at approximately 9:00 a.m., the Sheriff reported to the Network that they were unable to identify "this 'John Doe.'" At 10:13 a.m., the Network asked the Coroner for authorization to recover the organs of John Doe. The Coroner consented. The harvesting of Martin's kidney, liver, pancreas and heart began at approximately 11:30 p.m. and was completed by 2:16 a.m. on October 7, 1995. The Jacobsens allege that neither they nor Martin would have consented to the maintenance of Martin's body for organ donation or the removal of his organs for the purpose of making an anatomical gift.

On October 4, 1996, the Jacobsens filed suit against the Hospital, Network and Coroner, asserting a claim under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and various state law claims premised on the California Anatomical Gift Act, Cal. Health & Safety Code sections 7150—7156.5 (the "Gift Act"), and common law. The defendants each filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On April 16, 1997, the district court dismissed with prejudice the Jacobsens' complaint. *Jacobsen v. Marin Gen. Hosp.*, 963 F.Supp. 866 (N.D.Cal. 1997). It held that the Jacobsens' claims against the Coroner were barred because they had failed to first file a claim with the State Board of Control pursuant to the California Tort Claims Act. *Id.* at 870. It further held that, in any event, the search conducted to find Martin's next of kin was reasonable and that the defendants acted in compliance with the Gift Act when they maintained and harvested organs from Martin's body. *Id.* at 871—72. The district court thus entered judgment in favor of the Hospital, Network and Coroner. *Id.* at 874.

## DISCUSSION

We review de novo the district court's order dismissing the Jacobsens'

causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998). Our review is limited to the allegations of material facts set forth in the complaint, which are taken as true and read in the light most favorable to the Jacobsens. *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). We may affirm the district court's dismissal for failure to state a claim on any basis fairly supported by the record, even if the district court did not reach the issue or relied on other grounds or different reasoning. *Steckman*, 143 F.3d at 1295. However, the complaint should not be dismissed unless it appears beyond doubt that the Jacobsens can prove no set of facts in support of their claim that would entitle them to relief. *Id.*

The Jacobsens appeal the district court's dismissal with prejudice of five of their six causes of action. Of the five causes of action, three are premised on common law negligence theories: negligent search; negligence in procuring injury-producing conduct of another; and negligent infliction of emotional distress from the mutilation of a corpse. The remaining two causes of action assert claims for intentional infliction of emotional distress from the mutilation of a corpse and for joint enterprise liability. Because the Jacobsens' claims arise from the sequence of events that resulted in the harvesting of the organs of their son, Martin, the Jacobsens' claims fall under the Gift Act. Section 7151(a) of the Gift Act provides that under certain circumstances, certain classes of people in the following order of priority may authorize a gift of all or part of a decedent's body: (1) the attorney-in-fact with power of attorney; (2) the decedent's spouse; (3) the decedent's adult son or daughter; (4) either parent of the decedent; (5) the decedent's adult brother or sister; (6) the decedent's grandparent; or (7) the decedent's guardian or conservator of his or her person (collectively, "next of kin"). *Id.* § 7151. If, however, the decedent's next of kin cannot be located after a reasonable search has been made to locate them, the Gift Act authorizes either a coroner, hospital or public health official, whichever entity has custody of the decedent's body and seeks to release the body for organ donation, to make the anatomical gift. *Id.* § 7151.5. A person or entity who complies with the Gift Act or a similar anatomical gift act of another state, or who, in good faith, attempts to do so, is immune from civil and criminal liability. *Id.* § 7155.5.

## I. The Negligence Claims

The Jacobsens' three negligence claims for negligent search, negligence in procuring injury-producing conduct of another, and negligent infliction of emotional distress collectively allege that the Hospital's and Network's "custodial relationship" with Martin gave rise to a duty owed to the Jacobsens to search for Martin's next of kin and to protect the Jacobsens' right to Martin's remains. The claims further allege that both the Hospital and Network breached this duty. The district court dismissed the Jacobsens' negligence claims, determining that under section 7151.5 of the Gift Act, only the Coroner, not the Hospital or Network, owed a duty to the Jacobsens. 963 F.Supp. at 873 & n. 9. The Jacobsens argue that the district court should not have dismissed their negligence claims because, under either the Gift Act or common law, both the Hospital and Network owed a duty to the Jacobsens to search for Martin's next of kin and to protect the Jacobsens' right to his remains.

Whether a defendant owes a duty is a question of law. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal.3d 583, 588, 257 Cal.Rptr. 98, 770 P.2d 278 (1989). A duty in tort owing from a defendant to a plaintiff can be created by law, by a defendant's assumption of that duty, or by a preexisting relationship between the plaintiff and the defendant. *Id.* at 590, 257 Cal.Rptr. 98, 770 P.2d 278; *see also Aguirre–Alvarez v. Regents of the*

*Univ. of California,* 67 Cal.App.4th 1058, 1063, 79 Cal.Rptr.2d 580 (1998).

■ With regard to a duty arising from law, section 7151.5 of the Gift Act imposes a duty to ensure that a reasonable search has been made for a decedent's next of kin. This duty is imposed on either a coroner, hospital, or public health official, whichever of these three parties has custody of the decedent's body and seeks to permit the release of the decedent's body for organ donation. Cal. Health & Safety Code § 7151.5.

Here, the Jacobsens' complaint alleges that Martin was found unconscious and lying at the side of the road, that he was taken to the Hospital, and that it was the Coroner who released Martin's body for organ donation. Although the complaint alleges generally that each of the defendants had custody of Martin's body at different times, under Government Code section 27491 and Health and Safety Code section 7102, only the Coroner could have had charge of Martin's body and was entitled to the custody of his remains as a matter of law. *See Aguirre–Alvarez,* 67 Cal.App.4th at 1064, 79 Cal.Rptr.2d 580. Thus, because Martin's body was in the constructive custody of the Coroner, under section 7151.5 of the Gift Act, only the Coroner—not the Hospital or Network— had a duty to search for Martin's next of kin.[2] Since the Jacobsens' negligence claims allege that the Hospital and Network breached their duty to ensure that a reasonable effort was made to search for Martin's next of kin, and only the Coroner owed this duty, the Jacobsens' negligence claims cannot state a cause of action against the Hospital and Network.

■ Although the Jacobsens contend that the Hospital and Network owed a duty to them arising from common law to search for Martin's next of kin, the Jacobsens cite to no authority for this proposi-

tion, nor do we find such a duty existed. As stated previously, a duty may exist under common law if the Hospital and Network affirmatively undertook to search for Martin's next of kin or if a special relationship existed between the Jacobsens and the Hospital and Network. *See Marlene F.,* 48 Cal.3d at 590, 257 Cal.Rptr. 98, 770 P.2d 278. Here, however, the Jacobsens have not alleged facts to demonstrate that the Hospital and Network affirmatively undertook to search for Martin's next of kin. Nor do the facts alleged in the complaint demonstrate a preexisting or special relationship between the Jacobsens and the Hospital and Network giving rise to such a duty. Finally, the public policy rationale articulated in the Gift Act would not warrant imposing a duty to search for Martin's next of kin on the Hospital and Network.

The Jacobsens' negligence causes of action against the Hospital and Network are based on the purported "custodial relationship" and duty owed by the Hospital and Network to the Jacobsens to search for Martin's next of kin. Accordingly, because no such relationship or duty existed under section 7151.5 of the Gift Act or arose under common law, the Jacobsens' claims for negligent search, negligent mutilation, and negligence in procuring injury-producing conduct fail to state a cause of action against the Hospital and Network and were properly dismissed with prejudice. Because we conclude that the Hospital and Network had no duty to search for Martin's next of kin, we need not inquire into the reasonableness of the search performed by the Coroner.

We therefore affirm the district court's dismissal with prejudice of the Jacobsens' claims against the Hospital and Network for negligent search, negligent mutilation, and negligence in procuring injury-producing conduct.

---

2. The issue of whether the Coroner complied with section 7151.5 of the Gift Act, however, is not before us.

## II. The Claim For Joint Enterprise Liability

The Jacobsens argue that the district court erred in dismissing their claim for joint enterprise liability. To state a cause of action, the Jacobsens must allege facts to demonstrate that the Hospital, Network, and Coroner each had the right of control over the other. *Christensen v. Superior Court,* 54 Cal.3d 868, 893, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991). Additionally, the Jacobsens must allege facts to demonstrate a community of interests in a common undertaking in which the Hospital, Network, and Coroner had or exercised the right of equal or joint control and direction. *Id.* "It is not sufficient that the parties have certain plans in common, but the community of interests must be such that each is entitled to be heard in the control of the enterprise." *Id.* (citations omitted).

The Jacobsens' cause of action for joint enterprise liability fails to state a claim against either the Hospital or the Network because the allegations of the complaint demonstrate that the Hospital, Network, and Coroner did not have a community of interest in which each had control over the other. To the contrary, the Hospital, Network, and Coroner could not have had or exercised joint control over Martin's remains in light of the control conferred exclusively on the Coroner by Government Code section 27491 and Health & Safety Code section 7102. Indeed, the Jacobsens allege, among other things, that the Network sought permission from the Coroner to obtain the release of Martin's remains, which was initially denied. Had the defendants exercised equal control over Martin's remains, it would not have been necessary for the Network to obtain permission to release his remains from the Coroner.

At best, the Jacobsens' allegations demonstrate a common plan amongst the defendants. However, allegations that the defendants shared information and remained in good standing with one another are not sufficient to demonstrate the requisite degree of control necessary to state a cause of action for joint enterprise liability. *Christensen,* 54 Cal.3d at 893, 2 Cal. Rptr.2d 79, 820 P.2d 181. The Jacobsens' cause of action for joint enterprise liability thus fails to state a claim against both the Hospital and the Network. This claim was therefore properly dismissed with prejudice.

## III. The Claim For Intentional Mutilation

The Jacobsens' common law cause of action for intentional mutilation of a corpse is essentially a cause of action for intentional infliction of emotional distress. *See Christensen,* 54 Cal.3d at 905, 2 Cal. Rptr.2d 79, 820 P.2d 181 (stating the tort of intentional mishandling of a corpse "actually seek[s] to protect the personal feelings of the survivors. Therefore the tort is properly categorized as intentional infliction of emotional distress ...."). To state their cause of action, the Jacobsens must allege facts to demonstrate the actions of the Hospital and Network amounted to extreme and outrageous conduct that was intended to cause, or recklessly disregarded the probability of causing, emotional distress. *Id.* at 903, 2 Cal.Rptr.2d 79, 820 P.2d 181. Their conduct would be considered "outrageous" if it was so extreme as to "exceed all bounds of that usually tolerated in a civilized community." *Id.* Additionally, the Jacobsens must allege that the conduct complained of was directed at them, or occurred in their presence. *Id.*

For their cause of action, the Jacobsens allege that, although Martin was clinically brain dead, the Network and Hospital nevertheless maintained Martin's body and harvested his organs. They further allege that the Hospital and Network failed to search for them and did not know the identity of Martin's next of kin.

Because the complaint alleges that the defendants did not know the identity of Martin's next of kin, the Jacobsens cannot

888

allege that the conduct complained of was directed primarily at them, was calculated to cause them severe emotional distress, or occurred in their presence. *See Christensen*, 54 Cal.3d at 906, 2 Cal.Rptr.2d 79, 820 P.2d 181. The Jacobsens' cause of action for intentional mutilation thus fails to state a claim against the Hospital and Network and was properly dismissed with prejudice.

## CONCLUSION

For all of the foregoing reasons, we conclude that the district court's order dismissing all of the Jacobsens' causes of action against the Hospital and Network with prejudice was correct. We therefore affirm the district court's order.

**AFFIRMED**.